Thomas A. JOHNSON,
Petitioner-Appellant,

v.

Jack R. DUCKWORTH, Superintendent,
and Indiana Attorney General,
Respondents-Appellees.

No. 85–1246.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1986.

Decided June 19, 1986.

David F. Hamilton, Indianapolis, Ind., for petitioner-appellant.

Charles N. Braun, II, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before BAUER, WOOD and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner-appellant Thomas A. Johnson appeals from the district court's decision denying his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Johnson claims his constitutional rights were violated when his defense attorney did not allow him to make a final decision regarding the disposition of a plea agreement offered by the prosecution. We affirm the decision of the district court.

## I.

Johnson is presently serving a thirty-year sentence as a result of his state jury

conviction for the murder of his brother. Johnson, while still a minor, shot his brother after the two had been involved in a heated argument.

Prior to his trial, the state prosecution offered Johnson a plea bargain under which he would have been charged with voluntary manslaughter with the prosecution recommending a fifteen-year sentence in exchange for a plea of guilty. Johnson's defense attorney, Hamilton Carmouche, discussed the offer with both Johnson, who at the time was seventeen, and his parents. Although he discussed the offer with Johnson, Carmouche believed that due to the defendant's unstable mental state and tender age that Johnson would be unable to assist in the preparation of his own defense, including the decision to either accept or reject the proposed plea agreement. Johnson, at his post-conviction hearing, conceded that he was "very confused" at the time of trial and went so far as to describe himself as incompetent. In fact, one of the defenses Carmouche raised on Johnson's behalf was a plea of insanity. As a result of his client's mental state, Carmouche testified that he relied on consultations with Johnson's father in preparing the defense.

The plea bargain offered Johnson was ultimately rejected by Carmouche. Defendant Johnson was informed of the offer, although he played no part in its ultimate rejection. There is nothing in the record that would indicate, however, that he opposed rejecting the plea bargain or that he was dissatisfied with his attorney for making the ultimate decision. Carmouche based his decision to reject the offer on Johnson's father's adamant disapproval as well as his own belief that the offer was strategically not a good one from his client's perspective. At the post-conviction hearing, Carmouche stated that he "felt at the time the worst that would happen to [Johnson] was manslaughter" if the case went to trial. Johnson was eventually found competent to stand trial and was tried and convicted as an adult.

After his trial Johnson exhausted his post-conviction state court remedies to no avail, and thereafter, filed a *pro se* petition in district court for a writ of habeas corpus alleging that Carmouche's rejection of the plea offer violated his constitutional rights. The district court denied the petition and Johnson appeals.

## II.

Johnson has based his petition for habeas relief primarily on grounds that he was denied effective assistance of counsel when his attorney did not allow him the opportunity to make a final decision regarding the plea agreement.[1] There is no doubt that the sixth amendment's guarantee of a right to counsel must necessarily include the right to effective assistance of counsel. *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984); *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980); *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court articulated the test we are to apply in weighing the merits of a habeas petition alleging ineffective assistance of counsel. *See Hill v. Lockhart,* —— U.S. ——, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985) (applying *Strickland* test "to ineffective assistance claims arising out of the plea process"). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104

---

1. Apart from the ineffectiveness claim, Johnson also alleges that he has a personal right, protected by the sixth and fourteenth amendments, to make a final decision regarding any proffered plea agreement. In the context of this case, Johnson's allegation is, in effect, nothing more than a restatement of his ineffective assistance claim. Johnson does not contend that anyone, other than his attorney, interfered with his right to decide. Unless attorney Carmouche, through ineffective assistance, intruded upon Johnson's purported right, therefore, no constitutional violation has occurred.

S.Ct. at 2064–65. Under this test, "the performance inquiry must be whether counsel's assistance was reasonable considering all of the circumstances." *Id.* at 688, 104 S.Ct. at 2065.

Although the Court in *Strickland* refused to discuss specific guidelines defining reasonable assistance, it did note that, among other duties, counsel has an obligation "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id.* Nevertheless, the Court was mindful of the fact that "[j]udicial scrutiny of counsel's performance must be highly deferential," and that courts should ensure that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. at 2065. Indeed, to succeed on an ineffective assistance claim, the defendant seeking relief must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.*

Even if a defendant is able to overcome the presumption of adequate assistance, relief need not necessarily follow under *Strickland.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. at 2067. In order to be entitled to relief, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. We must therefore determine whether attorney Carmouche acted unreasonably in his defense of Johnson and, if so, whether those actions were so prejudicial that habeas relief is warranted in this case.

It is undisputed that a defendant has a constitutional right to participate in the making of certain decisions which are fundamental to his defense. *Jones v.*

*Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). Included among these fundamental choices are the decisions to forgo the assistance of counsel, *Faretta v. California,* 422 U.S. 806, 834, 95 S.Ct. 2525, 2540, 45 L.Ed.2d 562 (1975), and to waive trial by jury, *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942). Similarly, the decision to plead guilty is one that must be made by the defendant, and is not one in which an attorney may speak for his client without consultation. *Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1711–13, 23 L.Ed.2d 274 (1969); *Brookhart v. Janis,* 384 U.S. 1, 7, 86 S.Ct. 1245, 1248, 16 L.Ed.2d 314 (1966). Johnson argues here that the decision to reject or accept a plea is likewise a fundamental decision which an attorney cannot make for his client without giving rise to a claim of ineffective assistance.

Johnson correctly points out that neither the Supreme Court nor this court have yet decided whether an attorney, without consulting with his client, may constitutionally decide not to accept a proffered plea agreement. Johnson argues that the decision to reject a plea agreement is merely the flip side of the decision to plead guilty and that, *a fortiori,* a defendant's rights are violated when his attorney unilaterally rejects the agreement. The issue is not quite as simple as Johnson would have us believe, however. There is a vast difference between what happens to a defendant when he pleads guilty as opposed to what occurs when a plea agreement is rejected. The rejection of a plea agreement, in most instances, will result in the defendant going to trial with all of the concomitant constitutional safeguards that are part and parcel of our judicial process. The defendant who pleads guilty, on the other hand, waives many of these protections, including, for example, the right to trial by jury, *Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712, and the right to object to allegedly unconstitutional searches and seizures, *Stevenson v. Mathews,* 529 F.2d 61, 63 (7th Cir.), *cert. denied,* 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193

(1976). *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). Contrary to Johnson's contentions, there is a significant difference between the consequences emanating from a decision to reject a plea agreement and not plead guilty and the decision to enter a guilty plea. *See Boykin*, 395 U.S. at 242, 89 S.Ct. at 1711 (noting that in essence a plea of guilty is a conviction; "nothing remains but to give judgment and determine punishment"). We therefore reject Johnson's argument that the Supreme Court's decisions in *Boykin* and *Brookhart*, which set out a defendant's right to make the final decision regarding a plea of guilty, are necessarily controlling in the present case.

Our own analysis cannot end here, however. Simply because the decision to plead guilty and the decision to reject a plea agreement are fundamentally different, does not mean that an attorney is barred from unilaterally making the decision in the former and allowed a free rein to choose in the latter. Indeed, the courts that have considered the plea agreement issue have generally concluded that the defendant has a right to be informed about the plea agreement as part of his participation in the decision-making process surrounding his defense. *E.g., United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir.1982); *Harris v. State*, 437 N.E.2d 44, 45–46 (Ind.1982); *Lyles v. State*, 178 Ind.App. 398, 382 N.E.2d 991, 993 (1978) (attorney's failure to communicate plea offer violates defendant's rights); *State v. Simmons*, 65 N.C.App. 294, 309 S.E.2d 493, 497 (1983) (failure to inform client of proffered plea agreement constituted ineffective assistance of counsel in the absence of extenuating circumstances).[2] *See People v. Whitfield*, 40 Ill.2d 308, 239 N.E.2d 850 (1968). In *United States ex rel. Caruso v. Zelinsky*, for example, the Third Circuit affirmed the district court's

conclusion that an attorney's "failure to communicate a plea bargain offer would deny [the defendant] his sixth and fourteenth amendment rights," noting that "[i]t would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards." 689 F.2d at 438.

The Code of Professional Responsibility and the American Bar Association Standards for Criminal Justice likewise indicate that a defendant should be informed about and participate in the plea bargaining process. For example, ABA Standard 4–6.2(a) provides:

> In conducting discussions with the prosecutor the lawyer should keep the accused advised of developments at all times and all proposals made by the prosecutor should be communicated promptly to the accused.

I American Bar Association Standards for Criminal Justice Standard 4–6.2(a) (2d ed. 1980 and 1986 Supp.). *See also* ABA Code of Professional Responsibility, EC 7–7; ABA Standard 4–5.2. These standards of conduct are relevant to a court in resolving claims alleging ineffective assistance of counsel. As noted above, the Supreme Court in *Strickland* declined to outline standards of constitutionally minimal professional competence, noting that the sixth amendment ultimately relies "on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." 466 U.S. at 688, 104 S.Ct. at 2065. More specifically, the Court noted that, in dealing with claims of ineffective assistance, "[p]revailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable, but they are only guides."

---

**2.** It is interesting to note that in denying Johnson post-conviction relief as a result of Carmouche's actions, the Indiana Supreme Court did not cite either its decision in *Harris* or the appellate court's decision in *Lyles*. *Johnson v.*

*State*, 440 N.E.2d 459 (1982). Nonetheless, Johnson now contends that both *Harris* and *Lyles* directly support his claim for relief in this court.

*Id. Accord Nix v. Whiteside,* — U.S. —, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986).

■ After examining the cases and professional standards, we fully agree with Johnson that in the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel under the sixth and fourteenth amendments. Apart from merely being informed about the proffered agreement, we also believe that a defendant must be involved in the decision-making process regarding the agreement's ultimate acceptance or rejection.

■ In the instant case, Johnson was informed of the agreement and was given an opportunity to discuss its ramifications with his attorney. In addition, Johnson necessarily must have been aware of its rejection, at the very latest, when his case proceeded to trial. Nonetheless, at no time prior to being convicted did Johnson state that he wanted to accept the agreement nor did he ever object to the decision that was made. Although Johnson obviously had the opportunity to voice his feelings regarding the decision to reject the plea agreement, in the normal situation this amount of involvement in the decision-making process might not be enough to pass constitutional muster. *See State v. Ludwig,* 124 Wis.2d 600, 369 N.W.2d 722 (1985). Johnson's situation is not, however, typical.

By his own admission, Johnson was very confused at the time that the prosecution offered the plea agreement. Although he was ultimately found competent to stand trial as an adult, this fact alone does nothing to mitigate the practical problems his attorney faced in presenting a proffered plea bargain to a seventeen-year-old client who was concededly laboring under confusion and who considered himself incompetent. Under the unique circumstances of this case, we believe that attorney Carmouche acted reasonably, although it would have been advisable, with the benefit of hindsight, for him to attempt to elicit a rational response from his client even though he may have believed such action to be futile. Carmouche informed his client of the plea agreement that was offered by the prosecution, discussed the agreement with his teenage client, and made the decision to reject what he believed was an unwise agreement in conjunction with his client's parents. In this case, we believe that Carmouche acted reasonably and that Johnson's right to effective assistance of counsel was not compromised.[3] *See Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066 ("a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct").

## III.

For the reasons stated above, the district court's decision denying Johnson's petition for habeas relief is

AFFIRMED.

---

3. Although, because of our resolution of this case, we need not reach a final decision regarding the second prong of the *Strickland* test, *i.e.,* whether counsel's alleged unreasonable actions had an effect on the judgment, we have serious doubt whether Johnson has shown the necessary prejudice to justify habeas relief. In his brief, Johnson argues that but for Carmouche's actions he "would have been *able* to tender to the state trial court a plea of guilty to voluntary manslaughter." (emphasis added). Johnson does not argue or allege in his brief, however, "that there is a reasonable probability that, but for counsel's errors," he would have accepted the plea agreement. *Hill v. Lockhart,* 106 S.Ct. at 370. Although he argues that he would have been able to accept the agreement but for Carmouche's actions, his freedom to act does not establish a reasonable probability that he would have acted. It is true that, for the first time in his reply brief, Johnson does cite his testimony from the post-conviction challenge to his attorney's actions which he claims illustrates his desire to plead guilty in conjunction with accepting the plea agreement. Nonetheless, Johnson cites no evidence prior to his conviction which would indicate any desire on his part to plead guilty to a lesser charge. Under these circumstances, we seriously doubt whether Johnson's after-the-fact testimony regarding his wishes in and of itself would be sufficient to establish that prior to trial, but for Carmouche's actions, there was a reasonable probability he would have accepted the plea agreement. *See Hill v. Lockhart, supra.*