STATE of Iowa, Appellee,

v.

Joseph B. KRAUS, Appellant.

Joseph B. KRAUS, Appellant,

v.

STATE of Iowa, Appellee.

No. 84–1047.

Supreme Court of Iowa.

Dec. 17, 1986.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., William E. Davis, Co. Atty., and James D. Hoffman, Asst. Co. Atty., for appellee.

HARRIS, Justice.

Contending he was denied effective assistance of counsel the defendant appeals following his conviction of second-degree murder. Iowa Code §§ 707.1, 707.3 (1983). He also appeals from a denial of postconviction relief on the same grounds. The case is unusual in that the defendant received inaccurate legal advice during plea negotiations instead of at trial. Defendant claims he relied on bad advice concerning the elements of second-degree murder and therefore declined an offer to plead to a lesser offense. We conditionally reverse the trial court. So doing we vacate a decision by the court of appeals.

Because the assignments of error address the quality of legal representation the facts relating to the criminal charge can be stated in summary form. Defendant's sister, Carol, moved into a house with another woman named Marilyn. Defendant later moved into the house and Carol thereafter moved out without paying rent to Marilyn. Marilyn and defendant told Carol they would keep Carol's furniture until the rent was paid.

Carol obtained the assistance of her (and defendant's) uncle George Bain to help retrieve her furniture. Bain, his wife, and Carol went to the house. An argument ensued and culminated in defendant shooting and killing Bain. As is typical there were conflicting versions of the altercation. According to defendant he grabbed a rifle in the basement only to scare his uncle who had followed him there and it accidentally discharged. The State's testimony indicated defendant intended to shoot the victim.

Defendant was arrested for second-degree murder but the State offered to accept a plea of involuntary manslaughter.

Although there is some doubt about the matter we must assume Kraus' trial attorney mistakenly told him the State would be required to prove a specific intent in order to obtain a second-degree murder conviction. Testimony on the question at the postconviction hearing was conflicting. Defendant's trial counsel testified in considerable detail that he accurately advised Kraus on the elements of the charge, whereas Kraus testified the attorney told him the State would have to prove a specific intent to kill as an element of second-degree murder.

On this record we cannot accept counsel's version of the advice. During cross-examination by Kraus' postconviction counsel the original defense attorney stated he did in fact tell Kraus that, in order to convict him of second-degree murder, the State would have to prove he had a specific intent to kill. On appeal the State justifies this cross-examination testimony as a misstatement. On review it must be said that the testimony casts considerable doubt on the advice and lends credence to Kraus' testimony.[1] We take the misadvice as established.

I. Intent was aptly explained in a court of appeals' dissenting opinion in this case:

According to Iowa case law, it is well established that "[f]irst degree murder is distinguished from second degree murder in that an element of first degree murder is specific intent to kill, while this element is not required in second degree murder." *State v. Reese*, 259 N.W.2d 771, 778 (Iowa 1977); *State v. Smith*, 242

---

1. The matter was further complicated by a confusing colloquy between Kraus and Judge Margaret Briles when he appeared under the plea agreement for the purpose of pleading guilty to involuntary manslaughter. That colloquy will be set out in a later division of this opinion.

N.W.2d 320, 326 (Iowa 1976); *State v. Leedom,* 247 Iowa 911, 916, 76 N.W.2d 773, 776 (1956); *State v. Miller,* 359 N.W.2d 508, 511 (Iowa Ct.App.1984). Second-degree murder does require proof of malice aforethought:

> While malice aforethought is the specific state of mind necessary to convict of murder, it is far different from the specific intent which is a necessary element of murder in the first degree. It may be express or implied from the acts and conduct of defendant.

*State v. Gramenz,* 256 Iowa 134, 142, 126 N.W.2d 285, 290 (1964). Malice aforethought is commonly defined as:

> A fixed purpose or design to do some physical harm to another which exists prior to the act committed. It need not exist for any particular length of time and requires only such deliberation as would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion.

*State v. Higginbotham,* 351 N.W.2d 513, 515 (Iowa 1984) quoting *State v. Sharpe,* 304 N.W.2d 220, 226 (Iowa 1981).

■ Our rules for considering claims of ineffective assistance of counsel are well understood. Because a fundamental constitutional right is at issue we make an independent evaluation of the totality of relevant circumstances. This amounts to a de novo review. *Taylor v. State,* 352 N.W.2d 683, 684 (Iowa 1984). To establish an ineffectiveness claim one must prove: (1) counsel failed to perform an essential duty and (2) prejudice resulted. *State v. Hrbek,* 336 N.W.2d 431, 436 (Iowa 1983). A claimant must satisfy this burden by a preponderance of all the evidence. *Kellogg v. State,* 288 N.W.2d 561, 563 (Iowa 1980).

■ The first prong (failure of essential duty) is not satisfied by a mere showing that trial strategy backfired or that another attorney would have tried the case differently. *Fryer v. State,* 325 N.W.2d 400, 413–15 (Iowa 1982). We ordinarily refuse to second-guess trial tactics, strategies, or judgment calls. *Sallis v. Rhoads,* 325 N.W.2d 121, 123 (Iowa 1982).

■ The second prong (prejudice) requires a showing that the failure worked to the client's actual and substantial disadvantage. To qualify it must appear that the failure amounted to "a denial of the accused's due process right to a fair trial, fundamental miscarriage of justice, or an equivalent constitutional deprivation." *State v. Miles,* 344 N.W.2d 231, 234 (Iowa 1984). The United States Supreme Court described prejudice this way:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 698 (1984).

■ Misadvice on a matter so basic as the elements of the criminal charge qualifies under the foregoing incompetent representation standard. *See State v. Schoelerman,* 315 N.W.2d 67, 71–72 (Iowa 1982) ("A normally competent attorney who undertakes to represent a criminal defendant should either be familiar with the basic provisions of the criminal code, or should make an effort to acquaint himself with those provisions which may be applicable to the criminal acts allegedly committed by his client."). The plea bargain stage is a critical point in a criminal proceeding, at which an accused's sixth amendment right to competent counsel has attached. *Meier v. State,* 337 N.W.2d 204, 208 (Iowa 1983).

■ In our previous cases involving attorney misadvice during plea bargain negotiations the misadvice led to a guilty plea, rather than, as here, to a not guilty plea. And we have found no cases from other jurisdictions involving misadvice which led to a not guilty plea. There have been several cases involving the analogous situation where an attorney fails to tell his accused client that the prosecution has of-

fered to accept a plea to a lesser offense. When a conviction of a greater offense has followed, similar claims have been made that the attorney's failure resulted in a lost chance to settle for a lesser sentence. Results have been mixed. *Johnson v. Duckworth,* 793 F.2d 898, 901 (7th Cir.1986) (though decision to plead guilty is fundamentally different from decision to plead not guilty, attorney may not unilaterally choose to reject plea bargain without advising client); *U.S. ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 443–44 (3d Cir.1982) (ineffective assistance of counsel found where attorney failed to communicate offer of plea bargain to client—case remanded for hearing to determine prejudice); *Rasmussen v. State,* 280 Ark. 472, 473–75, 658 S.W.2d 867, 868 (1983) (notwithstanding attorney's failure to communicate plea offer, court found "no grounds on which to set aside the finding of guilt or to order a new trial"); *People v. Brown,* 177 Cal.App.3d 537, 555–57, 223 Cal.Rptr. 66, 78 (1986) (no reversible error in absence of showing that plea bargain was in fact offered by prosecution); *People v. Whitfield,* 40 Ill.2d 308, 310–12, 239 N.E.2d 850, 852 (1968) (because of attorney's failure to communicate plea offer, conviction reversed and case remanded for a new trial); *Harris v. State,* 437 N.E.2d 44, 46 (Ind.1982) (no error in defense counsel's decision, communicated to defendant, electing not to engage in plea negotiations until counsel received a firm proposal from prosecution); *Curl v. State,* 272 Ind. 605, 607–09, 400 N.E.2d 775, 777 (1980) (attorney's delay in communicating offer of plea bargain until a few moments before trial did not call for reversal); *Rose v. State,* 488 N.E.2d 1141, 1145 (Ind.App. 1986) (not reversible error for defense counsel to reject plea offer); *Lyles v. State,* 178 Ind.App. 398, 401–02, 382 N.E.2d 991, 994 (1978) (failure to communicate plea offer was grounds for reversal, case remanded for plea under bargain or new trial); *State v. Simmons,* 65 N.C.App. 294, 299–300, 309 S.E.2d 493, 497 (1983) (attorney's failure to communicate plea bargain offer calls for reversal); *Commonwealth v. Napper,* 254 Pa.Super. 54, 60–61, 385 A.2d 521, 524 (1978) (because of counsel's inadequate explanation of plea offer to client, conviction reversed, case remanded for further plea negotiations or new trial).

No appellate response to misadvice in these circumstances is entirely satisfactory because the misadvice is less harmful to an accused who later stands trial than to an accused who is prompted to plead guilty.

> There is a vast difference between what happens to a defendant when he pleads guilty as opposed to what occurs when a plea agreement is rejected. The rejection of a plea agreement, in most instances, will result in the defendant going to trial with all of the concomitant constitutional safeguards that are part and parcel of our judicial process. The defendant who pleads guilty, on the other hand, waives many of these protections....

*Johnson v. Duckworth,* 793 F.2d at 900. Moreover, not all plea bargains culminate in guilty pleas. Some defendants change their minds. Sometimes the court rejects the plea.

A practical difficulty with the rule defendant espouses lies in finding an appropriate sanction. It would be anomalous if an accused were to enjoy an enviable advantage by virtue of the misadvice. Upon receiving misleading advice an accused could, under the proposed rule, proceed with the comforting knowledge there was no risk in the trial; an acquittal would free the defendant and an unfavorable verdict could be set aside.

As we have seen, some jurisdictions grant new trials when a defense attorney fails to advise the accused of a plea bargain offer. But it is difficult to see how a new trial restores the lost chance of the bargain. What is being offered is another fair trial. One more fair trial, or even a series of them, would not necessarily revive the lost chance.

In our view it is ordinarily inappropriate to order a second trial following a fair one because of a pretrial tactical error, even if misguided. We are unwilling to reverse

Kraus' conviction merely because his attorney's misadvice led to a not guilty plea.

II. The inquiry does not however end there. In addition to misadvice by his counsel this defendant was confused, as we are confused, by the misadvice by the judge when Kraus appeared to plead under the bargain. In the first instance Judge Briles gave conflicting signals on whether the State could in fact raise the charge to second-degree murder. Worse than that, the judge compounded defense counsel's misadvice by referring to second-degree murder as a "willful killing." In accordance with the plea bargain the plan to file a second-degree murder charge had been dropped and a charge of involuntary manslaughter had been filed. The following colloquy occurred:

THE COURT: Is there some reason why we aren't trying it?

MR. DOYLE [defendant's trial counsel]: In my judgment, from the—all the minutes, in talking with some of the parties that were present—at least in my judgment—the initial charge was to be second degree murder.

THE COURT: Well

MR. DOYLE: —and

THE COURT: —you and I would agree that probably doesn't fit.

MR. DOYLE: Well, I'm just saying, that was what we were told initially.

\*    \*    \*    \*    \*    \*

THE COURT: Do you understand the punishment isn't going to be any worse if you have your trial and lost? They have charged you now with involuntary manslaughter; they can't amend that and charge you with something more.

\*    \*    \*    \*    \*    \*

THE COURT: Well, ... the law states they can't amend it. I suppose they could dismiss it and file another charge—

MR. DOYLE: I want you to be fully aware what we had been discussing before.

THE COURT: Well, there can't be any worse punishment, however, if you demand a trial on this charge. Are you

telling me Mr. Hoffman [the county attorney] is saying if he demands a trial, he'll file another charge.

MR. DOYLE: I can quote Mr. Hoffman—and I think we can call him right now—that that's what he would do, Your Honor.

THE COURT: Well, I'm not sure that it's ethical or proper or lawful for me to take a plea under that kind of coercion from the County Attorney.

MR. DOYLE: Okay. I think we've got possibly—or I've got Joe [the defendant] confused enough now, so I think in his best interests, we should probably curtail the proceedings now, and maybe he and I will have to review it and just go to trial.

THE COURT: I don't know. I'm not trying to force anybody to trial, I'm simply saying that I've got a charge here, if he's pleading guilty to it because if he doesn't plead guilty to it they'll file a murder charge against him, then I need to know it. Is that why you're pleading guilty to involuntary manslaughter, because it's the least charge?

THE DEFENDANT: Yeah.

THE COURT: One of the reasons you're pleading guilty is because you're afraid that if you don't, the County Attorney will file a second degree murder charge like the original complaint, is that it?

THE DEFENDANT: I feel that's pretty much what I deserve.

THE COURT: All right. That's what I need to hear from you.

He can handle himself very well, Mr. Doyle.

MR. DOYLE: I understand that, Your Honor.

THE COURT: That clears up the only thing that was worrying the Court in this case. I also think this fits. I do. But I do want to make sure that you—make sure you know you can fight the thing out in open court, I want to make sure that you don't have to plead guilty, you can have your trial; do you understand that?

**676**

(Defendant nods head.)

MR. DOYLE: I think maybe now the Court has enlightened us more, I think in fairness not only to him, but to me, I'm in an awkward position now in the record, I think we should probably, in the best interests, go to trial. Because I'm sure you have a lot of questions and doubts now, after the Judge spelled this out, don't you?

THE COURT: Mr. Doyle, you can do whatever you want to do, because you're provoked with the Judge—

MR. DOYLE: No, no—

THE COURT: I'm not convinced that what you just said is in your client's best interests. Would you please let me get through the plea?

MR. DOYLE: All right.

THE COURT: Okay. Now, let's back off a little bit. This isn't a technicality— okay, you know, I need to know now how you feel, and if you understand what I'm saying, and I'd just as soon, counsel— when we're through, if you don't want your client to plead, I won't take a plea, but I'd just as soon that you'd stay out of it and let me have my conversation with your client, which is what the law requires.

Mr. Kraus, if I understand what you just now told me, that the reason you want to plead guilty to this is you think it's just about right, and what you de- serve; is that about what you told me?

THE DEFENDANT: I don't feel I de- serve, you know—

THE COURT: You don't think you deserve it at all?

THE DEFENDANT: Not going to prison for five years.

THE COURT: Okay. Well, I didn't understand you to say that. So would you like to think this over some more, before we go any further? You don't have to do this now; do you want to think it over a little more?

THE DEFENDANT: Well, the way— if I plead guilty to this right now, then I'm going to get five years, the way I understand.

THE COURT: That's right, that's what I told you.

THE DEFENDANT: If I go to trial, they could higher the charges then?

THE COURT: Whether they will file another case and dismiss this one, I don't know, but that is what they could do. They can't, as I put it, amend this one, they would have to dismiss this case and start a new case and charge you with murder in the second degree, which is— it's now a fifty year charge. I don't know if they could prove murder in the second degree or not. That's a willful killing.

THE DEFENDANT: I'd like to talk about it with my lawyer first.

Judge Briles' enthusiastic encourage- ment to plead not guilty, coupled with the conflicting and misleading advice, unques- tionably precipitated the defendant's deci- sion to spurn his counsel's insistence that the plea bargain should be accepted. It is apparent that the defendant's blunder (as it proved to be) arose, not from his miscom- prehension of the elements of a criminal offense, but from the ill-advised tactical counseling given him by Judge Briles. Un- der these circumstances, notwithstanding the fair trial that followed and notwith- standing the absence of any mistake by the prosecution, we cannot leave the defendant without a remedy.

We remand the case to district court and direct that the accused again be allowed to enter a plea to the included offense of involuntary manslaughter under the bar- gain formerly reached. If a guilty plea is entered judgment shall be pronounced ac- cordingly and defendant's conviction of sec- ond-degree murder shall stand as reversed. If the defendant fails or refuses to enter such a plea his conviction of second-degree murder shall stand affirmed.

III. We have not ignored defendant's alternative claims that he was also denied effective assistance of counsel by reason of a number of failures and omissions he be- lieves occurred during trial. To detail and comment on them would unduly extend this

opinion. These challenges fail under the adequate counsel standard outlined in *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984).

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED ON CONDITION AND CASE REMANDED.

All Justices concur except WOLLE, McGIVERIN, SCHULTZ, and NEUMAN, JJ., who dissent.

WOLLE, Justice (dissenting).

Defendant contends his conviction was tainted by ineffectiveness of counsel which occurred at three separate stages of this criminal proceeding: during plea bargaining; during presentation of opening statements and evidence to the jury; and near the close of trial when the jury was instructed on the elements of the charged offense and lesser included offenses. I agree with the majority that defendant is entitled to relief from the judgment of conviction because he has established he was prejudiced by his counsel's failure to perform an essential duty. From my review of this record, however, I conclude that the only prejudicial error resulted from counsel's failure to object to clearly erroneous jury instructions. I would reverse and remand for a new trial.

To obtain relief on a sixth amendment claim that counsel was ineffective a defendant must prove by a preponderance of the evidence that counsel failed to perform an essential duty and that the failure caused such prejudice as to constitute "a denial of the accused's due process right to a fair trial, a fundamental miscarriage of justice, or an equivalent constitutional deprivation." *State v. Miles*, 344 N.W.2d 231, 234 (Iowa 1984); *see Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 698 (1984) (accused must show that counsel's unprofessional errors caused a different result). We review such constitutional issues de novo. *Taylor v. State*, 352 N.W.2d 683, 684 (Iowa 1984).

## I. *The Rejected Plea Bargain.*

Defendant has not demonstrated he would have pleaded guilty to the charge of involuntary manslaughter if his counsel and the court in its colloquy with defendant had more clearly explained the elements of second-degree murder. Several factors lead me to that conclusion. Defendant's counsel vigorously recommended that he plead guilty to involuntary manslaughter, and defendant's initial acceptance of that advice brought about the hearing before Judge Briles and subsequent colloquy. The court correctly pointed out, and defendant understood from the colloquy, that a guilty plea would put him at risk for a sentence of five years in prison. To me it is plain defendant decided not to plead guilty to involuntary manslaughter for the reason he told the court: "I don't feel I deserve ... going to prison for five years." Defendant rejected the plea bargain at that point not because he misunderstood the technical elements of second-degree murder but because he was unwilling to accept the likely prison sentence.

It is also noteworthy that after that colloquy the prosecution left open until the commencement of trial the same proposed plea bargain, and during the intervening four months defendant's counsel continued to urge its acceptance. Again I conclude the likelihood of a five year sentence, not counsel's ineffectiveness, caused defendant to stand his ground. This record does not support defendant's contention that he would have accepted the plea if he had understood more clearly the elements of second-degree murder.

I also disagree with the remedy selected by the majority, a disposition which allows defendant on remand to accept the plea bargain formerly offered and directs the district court to accept such a plea. This disposition deprives the State of its ordinary prosecutorial discretion and also invades the usual discretion of the trial court to determine whether any plea bargain should be accepted under the circumstances existing at the time a defendant offers

to plead guilty. In *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), the Court drew a sharp line of demarcation between defective guilty pleas and bare plea bargains which have not been approved and accepted by the Court.

A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution.

*Id.* at 507, 104 S.Ct. at 2546, 81 L.Ed.2d at 442. Here, as in *Mabry,* the fruitlessness of plea negotiations did not amount to "a denial of the accused's due process right to a fair trial, a fundamental miscarriage of justice, or an equivalent constitutional deprivation." *Miles,* 344 N.W.2d at 234; *cf. State v. Aschan,* 366 N.W.2d 912, 915 (Iowa 1985) (affirming judgment of conviction resulting "not from a tainted guilty plea but from a jury trial"). Defendant has not demonstrated that he was prejudiced by the claimed ineffectiveness of his counsel in advising him concerning plea bargaining.

### II. *Trial Strategy.*

On the second ineffectiveness claim, I agree with the majority that defendant has not shown his counsel failed to represent him properly in connection with waiver of an opening statement and presentation of evidence to the jury. On those matters involving trial tactics and strategy, defendant's claim of ineffectiveness is without merit because defendant's trial attorney acted reasonably in selecting and following through on the chosen strategy of attempting to persuade the jury this case involved an accidental shooting. *See State v. Wilkens,* 346 N.W.2d 16, 19 (Iowa 1984); *State v. Veverka,* 271 N.W.2d 744, 750–51 (Iowa 1978).

### III. *Erroneous Jury Instructions.*

I do find merit in defendant's contention that he was prejudiced when his counsel failed to object to the trial court's jury instructions on the elements of second-degree murder and involuntary manslaughter. Failure of defense counsel to point out flaws in jury instructions may be so egregious and prejudicial as to mandate a new trial for infringement of a defendant's sixth amendment right to effective assistance of counsel. *State v. Goff,* 342 N.W.2d 830, 838 (Iowa 1983). Defendant has proved that a failure of that magnitude occurred in this case.

Defendant's trial counsel submitted no proposed jury instructions and made no objections to the trial court's charge to the jury. In my view, however, the trial court's charge misinformed the jury on several elements of murder in the second degree and the lesser included charge of involuntary manslaughter. The missing elements were critical to defendant's theory that the gun had accidentally discharged. *See State v. Blackford,* 335 N.W.2d 173, 178 (Iowa 1983) (defense counsel's primary concern should be the elements "essential to the theory of the defense").

In its marshalling instruction on the elements of murder in the second degree, the trial court did not inform the jury that the State was required to prove defendant intentionally shot the victim, stating rather that the first element was that defendant "did unlawfully shoot" the victim. The word "unlawfully" in that instruction suggested that any unlawful shooting, regardless of the intention to perform the act, would suffice. Although specific intent to kill was not an element of second-degree murder, general intent to commit the act of shooting was required. *See State v. McCormack,* 293 N.W.2d 209, 212 (Iowa 1980); Dunahoo, *The New Iowa Criminal Code,* 32 Drake L.Rev. 61, 78 (1983).

The State argues that the court's instruction on malice aforethought provided the element of general intent, but I disagree. The references to "intentionally" and "deliberate" in the five-paragraph instruction on malice were nowhere repeated or directly referenced in the marshalling instruction setting forth the elements of second-degree

murder. The jury could well have been misled by that instruction into believing that second-degree murder could be committed by an accidental, though unlawful, shooting of the victim. The firing of a weapon under circumstances which constituted an assault or even involuntary manslaughter would be unlawful but not necessarily second-degree murder. The important question for the jury to answer was whether this shooting was or was not intentional. The failure to object to the instruction setting forth the elements of second-degree murder constituted prejudicial ineffective assistance of counsel.

Even more crucial to defendant's theory that the shooting was accidental were the instructions governing involuntary manslaughter. The definition of involuntary manslaughter applicable to the facts in this case was set forth in Iowa Code section 707.5(1) (1983). *See State v. Ware*, 338 N.W.2d 707, 715 (Iowa 1983); *State v. Inger*, 292 N.W.2d 119, 122–24 (Iowa 1980). The State was required to prove beyond a reasonable doubt that the defendant (1) unintentionally, (2) recklessly, and (3) without justification, (4) caused the death of another person, (5) by the commission of a public offense other than a forceable felony or escape. *See* Dunahoo, *The New Iowa Criminal Code: Part II*, 29 Drake L.Rev. 491, 588 (1980); *State v. Conner*, 292 N.W.2d 682, 686 (Iowa 1980) (recklessness a necessary element of both definitions of involuntary manslaughter). The trial court's marshalling instruction on involuntary manslaughter, however, omitted the second element and only vaguely referred to the first and fifth elements. The instructions did not make clear that the implicated public offense was assault. The very essence of counsel's theory of defense was the accidental nature of this tragic homicide. The instructions to the jury missed that central point.

I would grant defendant a new trial because (1) defendant's trial counsel should have assisted the court, the jury, and his client by providing accurate instructions focused on the theory of the defense, and (2) there is a reasonable probability that if the jury had been correctly instructed on the elements of the charged and included offenses it would have returned a verdict of guilty on the lesser included offense of involuntary manslaughter, not the charged offense of second-degree murder.

I would vacate the decision of the court of appeals, reverse defendant's conviction of murder in the second degree, and remand this case for a new trial.

McGIVERIN, SCHULTZ and NEUMAN, JJ., join this dissent.