

I N T H E

# Court of Appeals of Indiana

Mathew W. McCallister,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Sep 26 2025, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

September 26, 2025

Court of Appeals Case No.
24A-PC-1521

Appeal from the Warrick Superior Court

The Honorable Krista Hamby Weiberg, Judge

Trial Court Cause No.
87D01-1811-PC-000632

---

**Opinion by Judge Felix**
Judges Pyle and Weissmann concur.

**Felix, Judge.**

## Statement of the Case

Mathew McCallister murdered a friend execution-style for making a sexual advance to his sister. After he was convicted for this murder and lost his direct appeal, McCallister filed a petition for post-conviction relief ("PCR"), alleging ineffective assistance of trial counsel and a due process violation in sentencing. The PCR court denied McCallister's petition. McCallister appeals that denial and presents four issues for our review, which we revise and restate as the following single issue:

1. Whether the PCR court clearly erred when it denied McCallister's PCR petition.

We affirm.

## Facts and Procedural History

In 2016, a jury convicted McCallister of murder and conspiracy to commit murder as a Class A felony. The Indiana Supreme Court has previously set out the facts underlying those convictions:

> During February 2014, Defendant, Mathew McCallister, lived with his girlfriend, Kelli Wyrick, in a series of hotels in Evansville, Indiana. Also living in Evansville hotels then were their friends Shawn Grigsby and Grigsby's girlfriend. The two couples would sometimes visit each other's rooms to use illegal drugs. On February 16, the couples were staying in adjoining rooms at a local Fairfield Inn, and they invited McCallister's sister, Jade Stigall; her fiancé, David Lackey; and McCallister's

friend, Joseph Nelson; to join them at the hotel to smoke methamphetamine.

*McCallister v. State*, 91 N.E.3d 554, 556 (Ind. 2018).

[4] "At some point that evening, everyone left McCallister's room except Stigall and Nelson." *McCallister*, 91 N.E.3d at 556. Nelson made a perceived "unwelcomed sexual advance" to Stigall. *Id.* Stigall told McCallister what happened, and he "told Lackey and Grigsby to get Nelson out of the hotel and drive him to a local convenience store, where McCallister and Wyrick would meet them." *Id.* Stigall, Lackey, Grigsby, and Nelson

> met McCallister and Wyrick at the convenience store. McCallister got into the vehicle and directed Stigall, who was driving, to a rural area outside of Boonville in adjacent Warrick County. As they drove, McCallister . . . told Nelson to "start making amends" with "which God or to which sort he believes in." . . .
>
> McCallister eventually directed Stigall to park near the Liberty Mine, a coal mine located in a remote area of Warrick County. . . . Stigall saw Grigsby give his gun to McCallister. . . .
>
> As they walked, the men went around a corner and were momentarily out of Stigall's field of vision. When she turned the corner, she saw Nelson on his knees with McCallister and Grigsby standing behind him. She then saw a "spark go off from the gun" and "heard the pop and seen [sic] the flash" as McCallister shot Nelson in the back of the head. An obstructed view prevented Stigall from seeing the gun in McCallister's hand, but she saw McCallister's arm raised directly behind Nelson's head, observed the flash and heard the gunshot, and then

watched McCallister's arm drop to his side as Nelson fell forward. As the group left the crime scene, they left Nelson's body behind.

Stigall drove the three men back to Evansville. En route, McCallister directed Stigall to drive to a specific location where he disposed of the gun and the ammunition down a sewer drain. . . .

Later that morning, Nelson's corpse was discovered in a coal-conveyor chute at the Alcoa plant. . . . An autopsy revealed that Nelson was killed by a single gunshot wound to the head—a so-called "contact" wound, meaning that when the shot was fired, the gun's barrel was either touching, or no more than a half-inch away from, the victim's head. The bullet entered Nelson's neck about half an inch behind his right ear and exited through his right eye. The bullet's trajectory was consistent with Stigall's account that Nelson was murdered execution-style. . . .

A few days after police recovered Nelson's body, they obtained surveillance video from the Fairfield Inn. The video showed Nelson leaving the hotel with Grigsby, Stigall, and Lackey, prompting police to suspect the three knew something about Nelson's murder. Police already had information to support unrelated drug charges against Stigall and Lackey, so they brought charges and arrested them in hopes of persuading one of them to explain what happened to Nelson. Stigall not only gave detailed information about the murder, but also took police to the sewer drain where police recovered Grigsby's handgun and to the burn pile, where she had disposed of the clothes. For his part, Lackey showed police where the murder occurred. There they found rocks stained with Nelson's blood and a spent shell casing, which ballistics testing showed was fired from the recovered handgun. . . .

When McCallister went to trial in July 2016, Stigall had already pleaded guilty to assisting a criminal with murder. She testified that McCallister was the shooter. Grigsby, who by then had pleaded guilty to conspiracy to murder Nelson and received a twenty-year sentence, testified as a defense witness that he (Grigsby) had shot Nelson. After a six-day trial, the jury found McCallister guilty of murder and conspiracy to commit murder, a class A felony.

During the penalty phase, the jury found as an aggravating circumstance that McCallister committed the murder while on parole. The jury also determined this aggravating factor outweighed any mitigating circumstances, and it unanimously recommended a sentence of life without parole. The trial court imposed that sentence for murder and a concurrent forty-year term for conspiracy.

*Id.* at 557–58.

[5] At trial and sentencing, Steve Bohleber and Brett Roy (collectively, "Trial Counsel") represented McCallister. On direct appeal, the Indiana Supreme Court affirmed McCallister's convictions and sentence. *McCallister*, 91 N.E.3d at 555.

## Post-Conviction Proceedings

[6] On November 5, 2018, McCallister filed a PCR petition pro se, which he later amended through counsel. McCallister alleged he received ineffective assistance of trial counsel and that his life without the possibility of parole ("LWOP") sentence violated his due process rights. After an evidentiary

hearing, the PCR court denied McCallister's petition. This appeal ensued. Additional facts are set forth below.

## Discussion and Decision

### The PCR Court Did Not Clearly Err in Denying McCallister's PCR Petition

McCallister contends that the PCR court erred when it denied his PCR petition. "Post-conviction actions are civil proceedings, meaning the petitioner (the prior criminal defendant) must prove his claims by a preponderance of the evidence." *Bobadilla v. State*, 117 N.E.3d 1272, 1279 (Ind. 2019) (citing Ind. Post-Conviction Rule 1(5); *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013)). When a petitioner appeals the denial of post-conviction relief, he "appeals from a negative judgment, so he must show that 'the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court.'" *Kelly v. State*, 257 N.E.3d 782, 792 (Ind. 2025) (quoting *Conley v. State*, 183 N.E.3d 276, 282 (Ind. 2022)). That is, the petitioner must demonstrate "clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Bobadilla*, 117 N.E.3d at 1279 (quoting *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017)). "We do not reweigh the evidence presented at the post-conviction proceedings, and we examine only the evidence and reasonable inferences that support the post-conviction court's determination." *Kelly*, 257 N.E.3d at 792 (quoting *Conley*, 183 N.E.3d at 282). We review pure legal questions de novo. *Id.* (citing *State v. Stidham*, 157 N.E.3d 1185, 1190 (Ind. 2020)).

In support of his position, McCallister raises two main issues for our review: (a) whether the PCR court clearly erred when it concluded McCallister did not establish that he received ineffective assistance of counsel and (b) whether the PCR court clearly erred when it found that McCallister is not entitled to a new sentencing hearing. We address each contention in turn.

### a. *Ineffective Assistance of Trial Counsel*

To evaluate a petitioner's ineffective-assistance-of-counsel claim, "we apply the well-established, two-part *Strickland* test."[1] *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019) (citing *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017)). Under that test, the defendant must prove: (1) "counsel rendered deficient performance, meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms"; and (2) "counsel's deficient performance prejudiced the defendant," that is, there exists a reasonable probability that "but for counsel's errors the result of the proceeding would have been different." *Id.* (citing *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012)); *see also Middleton v. State*, 72 N.E.3d 891, 891 (Ind. 2017) (quoting *Strickland v. Washington*, 466 U.S. 688, 694 (1984)) ("[T]o demonstrate prejudice from counsel's deficient performance, a petitioner need only show 'a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"). "A reasonable probability is a

---

[1] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

probability sufficient to undermine confidence in the outcome." *Middleton*, 72 N.E.3d at 891–92 (quoting *Strickland*, 466 U.S. at 694) (citing *Campbell v. State*, 19 N.E.3d 271, 274 (Ind. 2014); *Wilkes v. State*, 984 N.E.2d 1236, 1241 (Ind. 2013)). Failure to satisfy either of the two prongs will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

[10] "There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics and these decisions are entitled to deferential review." *Weisheit v. State*, 109 N.E.3d 978, 983 (Ind. 2018) (internal citations omitted) (citing *Stevens v. State*, 770 N.E.2d 739, 746–47 (Ind. 2002)). Moreover, "isolated mistakes, poor strategy, inexperience and instances of bad judgment do not necessarily render representation ineffective." *Id.* at 984 (citing *Stevens*, 770 N.E.2d at 747).

[11] In his amended petition for PCR relief, McCallister alleges Trial Counsel were ineffective for failing to (i) call a witness; (ii) advise of all plea offers; and (iii) object to an "evidentiary harpoon." Appellant's App. Vol. II at 52. **(*Id*. at 51–52.)**

### i. Failure to Call a Witness

[12] McCallister first claims Trial Counsel were ineffective because they failed to call David Lackey as a witness whom, McCallister argues, was necessary. In the PCR hearing, Lackey testified that his trial testimony would have been that Grigsby shot Nelson. PCR Tr. Vol. II at 45. McCallister claims that Lackey's

testimony "would have cast significant doubt on [Stigall's] testimony and bolstered Grigsby." Appellant's App Vol. II at 95. Trial Counsel knew Lackey was a witness to the murder and knew that Lackey had previously stated that Grigsby was the shooter. However, they had "questions about what he was actually going to say, what his credibility was." PCR Tr. Vol. II at 29. Bohleber elaborated on his concerns during the PCR hearing: "[Lackey] was rather mercurial and there was evidence that [Stigall] ended up placing pressure on him to conform his testimony with hers under the threat that she'd divorce him if he got on the witness stand and said Grigsby did it, not McCallister." *Id*. at 8. Additionally, Trial Counsel were aware of a statement Lackey previously made that, "if it happened, it was because [McCallister] wanted it to happen" and McCallister "was the one in charge." *Id*. at 31. Regardless, the information McCallister wanted Lackey to present to the jury—that he saw Grigsby shoot Nelson—was already conveyed to the jury through Stigall's testimony. At trial, Stigall testified that Lackey believed Grigsby was the shooter. Additionally, Grigsby testified that he was the shooter. Ultimately, Trial Counsel believed that "once Mr. Grigsby indicated he was the shooter, there was little need to call Mr. Lackey." *Id*. at 40. In other words, Trial Counsel believed that Lackey's testimony, at best, would have been cumulative of evidence to what had already been presented by both Stigall and Grigsby.

[13] The PCR court denied McCallister's ineffective assistance of counsel claim on this issue:

> [A]t best, Lackey's testimony would have been that he saw Grigsby shoot Nelson.  In terms of evidentiary value, a confession is far more valuable than an eyewitness.  Here, defense counsel essentially elicited a confession in front of a jury.  Nonetheless, the jury was unpersuaded.  Therefore, Petitioner fails to show that the result of his trial would have been different with Lackey rather than without him.

Appellant's App. Vol. II at 105.

[14]     McCallister challenged the PCR court's finding that Lackey's testimony would have been cumulative.  He argues that, by not calling Lackey, Trial Counsel "inadvertently signaled to the jury that he would have testified in favor of the State and not supported Grigsby's confession."  Appellant's Br. at 17.  McCallister later argued that "Lackey's silence *may* have telegraphed to the jury their belief that he would have supported Stigall's version of events."  *Id*. (emphasis added).  McCallister cannot hurdle the *Strickland* standard on speculation.  What the jury might have believed based upon the absence of a witness can hardly be the type of substantive evidence that proves the prejudice prong of *Strickland*.  Also, McCallister seems to argue that Trial Counsel did not know what Lackey would say at trial because Trial Counsel did not interview Lackey.  At the PCR Hearing, McCallister did prove that Bohleber did not interview Lackey prior to trial; however, McCallister did not prove whether Roy had interviewed Lackey prior to trial.  Once again, McCallister's argument regarding the impact of Trial Counsel's alleged failure to interview Lackey, including any corresponding lack of knowledge regarding what Lackey would have said on the witness stand, is mere speculation.  Here, Trial Counsel knew

Lackey was a potential witness and knew that, at best, he would say McCallister was not the shooter. Trial Counsel, with that knowledge, considered whether to present this evidence—which had already been presented to the jury by two different witnesses—and decided that the risks outweighed the potential benefit of presenting it. This is a classic case of strategic decision-making—not an example of counsel's performance falling below an objective standard of reasonableness.

[15] Furthermore, McCallister did not challenge the trial court's conclusion that there was no prejudice to McCallister by Trial Counsel not calling Lackey. We take as true any findings and conclusions that McCallister does not challenge on appeal. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992). Accordingly, we take as true the PCR court's undisputed lack of prejudice conclusion based on its uncontested findings regarding Trial Counsel's decision to not call Lackey as a witness. Further, we note that the PCR court's unchallenged findings, including Trial Counsel's efforts to impeach Stigall and their elicitation of Grigsby's confession, support the PCR court's conclusion that Trial Counsel's failure to call Lackey as a witness did not constitute ineffective assistance of counsel. Thus, the PCR court did not err in denying McCallister's claim that Trial Counsel provided ineffective assistance of counsel by not calling Lackey to testify.

### ii. Failure to Advise of Plea Offer

[16] McCallister argues that Trial Counsel failed to disclose a contemplated plea to him, relying on an internal email message between trial team members for this

proposition. McCallister claims that he would have accepted the offer of "a flat forty-five [years] with no right to modify." PCR Tr. Vol. II at 10. The PCR court denied McCallister's ineffective assistance of counsel claim on this issue:

> Here, Petitioner found an email authored by his trial counsel, Bohleber, that references an offer of "45 flat". Petitioner was never informed of this offer. However, Petitioner fails to produce any evidence that "45 flat" was an offer actually made by the State. To the contrary, [Trial Counsel] and [the prosecutor] all testified consistently that the "45 flat" was not an offer ever made. Rather, this email incorrectly stated the terms of the actual offer, which was correctly recited on the record in open court on March 23, 2016[,] and rejected by the Petitioner. Because the "45 flat" was not an offer made by the State, Petitioner cannot fault his attorney for failing to inform him of it. Therefore, this claim fails.

Appellant's App. Vol. II at 104. Acknowledging the State did not actually offer a "flat 45" year plea, McCallister nevertheless argues that "[h]ad counsel appropriately conveyed the offer recorded in the team email, McCallister would have signaled his interest in a plea to murder and further discussion would have ensued." Appellant's Br. at 20.

[17] When a petitioner claims that trial counsel was ineffective for failing to advise of a plea offer, the petitioner must prove that trial counsel "acted unreasonably by failing to inform him of the plea offer and that, but for counsel's actions, there was a reasonable probability that he would have accepted the plea offer." *Dew v. State*, 843 N.E.2d 556, 568 (Ind. Ct. App. 2006) (citing *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir. 1986)), *trans. denied*. McCallister does

not challenge any of the PCR court's findings or conclusions regarding this issue. Accordingly, we take as true the PCR court's undisputed findings that the email on which McCallister relies contained a typographical error, and no such offer was ever proffered or considered by the State. *See Madlem*, 592 N.E.2d at 687. This finding supports the PCR court's conclusion that there was no "flat 45" plea offer that Trial Counsel could have conveyed to McCallister. Thus, the PCR court did not err in denying McCallister's claim that Trial Counsel provided ineffective assistance of counsel by not advising McCallister of an offer that did not exist.

### iii. Failure to Object

[18] McCallister argues that Trial Counsel provided deficient counsel by failing to object to an "evidentiary harpoon." Appellant's Br. at 18. Specifically, McCallister argues that Trial Counsel should have objected to the State questioning Grigsby's motives to confess to murder. During the questioning, the State inquired whether "snitches get stitches" in prison. Appellant's Br. at 18 (quoting Trial Tr. Vol. V at 138). When a petitioner claims that trial counsel was ineffective for failing to object at trial, the petitioner "must prove that the trial court would have sustained the objection" to show prejudice under the second prong of the *Strickland* test. *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013) (citing *Lowery v. State*, 640 N.E.2d 1031, 1042 (Ind. 1994)).

[19] McCallister has failed to make a cogent argument for this claim in violation of Indiana Appellate Rule 46(A)(8)(a). Although McCallister argues "this claim is record-based and no additional evidence is necessary," he must still provide the

basis for the objection, prove that Trial Counsel's failure to object was not a strategic decision, and prove that the objection would have been sustained by the trial court. McCallister has failed to do so. McCallister did not develop any evidence on this claim below, having asked no questions of witnesses in the PCR hearing about this claim. "We will not step in the shoes of the advocate and fashion arguments on his behalf, 'nor will we address arguments' that are 'too poorly developed or improperly expressed to be understood.'" *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023) (quoting *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021)).

[20] McCallister also claims that he suffered prejudice from Trial Counsel's cumulative errors. However, because we have concluded that there was no error, we also conclude that there was no cumulative error.

### b. *Due Process in Sentencing*

[21] McCallister contends that he is entitled to a new sentencing hearing because "trial counsel's deficient performance in presenting his case"—namely, the failure to call Lackey to testify—left the jury "with the unchallenged conclusion that [McCallister] was the shooter when evidence available to counsel but not presented to the jury shows the contrary." Appellant's Br. at 22. McCallister cites to *United States v. Tucker*, 404 U.S. 443, 447 (1974) for the premise that "[a]n individual has a due process right not to be sentenced on materially inaccurate information." Appellant's Br. at 22. We have already concluded that the PCR court did not err in denying McCallister's claim that Trial Counsel provided ineffective assistance of counsel by not calling Lackey to

testify. And, we agree with the State's characterization of this claim as "derivative of [the] ineffective assistance [of counsel] claim" set forth to argue "additional prejudice Petitioner allegedly suffered." Appellee's Br. at 34. Nevertheless, we choose to address his claim that he was sentenced on materially inaccurate information.

[22] The record does not support McCallister's claim that the jury was left with the unchallenged conclusion that McCallister was the shooter. The jury did consider information in direct conflict with Stigall's testimony that McCallister was the shooter. Significantly, Trial Counsel elicited a confession from Grigsby in front of the jury that Grigsby was the shooter. Then, through Stigall's testimony, the jury was provided with evidence that (1) she was under the influence of methamphetamine at the time of the shooting and saw "shadow people," Trial Tr. Vol. III at 11; and (2) Lackey stood in front of Stigall when the shooting occurred; and (3) Lackey believed Grigsby was the shooter. Trial Counsel also called four additional witnesses to impeach Stigall's testimony that McCallister shot Nelson: (1) Amy Jo Downs testified that Stigall told her that Lackey shot Nelson; (2) Kylee Hannon testified that Stigall told her that Stigall did not actually see who shot Nelson; (3) Brittany Kendall testified that Stigall "wasn't positive if [McCallister] was the shooter or not," Trial Tr. Vol. V at 104; and (4) Tasha Malicoat testified that Stigall disclosed to her that she did not see who shot Nelson. The jury considered this conflicting evidence and convicted McCallister of murder and recommended an LWOP sentence. We therefore cannot say that McCallister is entitled to a new sentencing hearing.

## Conclusion

[23] Based on the foregoing, the PCR court did not clearly err by denying McCallister's PCR petition. We affirm the PCR court on all issues raised.

[24] Affirmed.

Pyle, J., and Weissmann, J., concur.

ATTORNEYS FOR APPELLANT

Amy E. Karozos
Deidre R. Eltzroth
Jay M. Lee
Indiana State Public Defender
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana