**Elias Walter WANATEE, Petitioner,**

v.

**John AULT, Warden, Respondent.**

**No. C97–4048–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

June 20, 2000.

F. Montgomery Brown, Des Moines, IA, for Elias Wanatee, petitioner.

Assistant Iowa Attorney General Sharon K. Hall, Des Moines, IA, for John Ault, respondent.

**MEMORANDUM OPINION AND ORDER REGARDING DISPOSITION OF PETITION FOR HABEAS CORPUS RELIEF**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. BACKGROUND .................................................... 1192

II. LEGAL ANALYSIS ................................................ 1194
 A. Standard Of Review ..................................... 1194
 B. Viability Of Wanatee's Claim ........................... 1194
 1. The requirements of § 2254(d)(1) ................... 1195
 2. Is Wanatee's claim reviewable under § 2254(d)(1)? ... 1196
 a. The state-court decision ....................... 1196
 b. The "contrary to" condition .................... 1197
 c. The "unreasonable application" condition ....... 1197
 d. Other challenges ............................... 1198
 e. Summary ....................................... 1199
 C. Wanatee's "Prejudice" ................................. 1199
 1. Whether a plea agreement was formally offered by the government .... 1201
 2. Whether Wanatee would have accepted the plea offer ... 1203
 a. Is the standard objective or subjective? ....... 1204
 b. Evidence of Wanatee's unwillingness to cooperate ... 1205
 c. Credible, non-conclusory evidence .............. 1206
 3. Whether Wanatee could have performed the proffered plea agreement ... 1207
 a. Terms of the plea agreement .................... 1208
 b. The information Wanatee could have provided ... 1211
 D. The Remedy ............................................ 1214

III. CONCLUSION ................................................... 1214

In his petition for *habeas corpus* relief from his conviction for first-degree murder, the petitioner contends, *inter alia,* that ineffective assistance of counsel led him to reject an offer to plead guilty to second-degree murder. In a supplemental report and recommendation concerning the "prejudice" prong of the petitioner's "ineffective assistance" claim, as required by this court in a prior ruling, *see generally Wanatee v. Ault,* 39 F.Supp.2d 1164 (N.D.Iowa 1999), a magistrate judge recommends a finding in favor of the petitioner and, as relief, recommends that the petitioner be allowed to plead guilty to second-degree murder. The respondent has objected to the supplemental report and recommendation, asserting, first, that review of the petitioner's "ineffective assistance" claim is foreclosed by the United States Supreme Court's recent interpretation of 28 U.S.C. § 2254(d)(1) in *Williams v. Taylor,* —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). If the claim is otherwise viable, the respondent contends that the petitioner has failed to establish that he would have accepted the plea bargain, even if he had received effective assistance of counsel, or that he would have been able to perform it, if he had accepted it. Thus, the respondent argues that the magistrate judge erred in concluding that the petitioner has established the necessary "prejudice" to sustain his "ineffective assistance" claim. This court must conduct a *de novo* review of those parts of the supplemental report and recommendation to which the respondent has objected.

## I. BACKGROUND

Petitioner Elias Wanatee was convicted of first-degree murder in Iowa District

Court for Woodbury County for his involvement in the death of Kelton DeCora in Sioux City, Iowa, in 1990. Wanatee was one of a number of people assaulting DeCora at the time DeCora died. Wanatee was apprehended while beating DeCora with a tire iron, but DeCora died of a stab wound. Wanatee rejected an offer to plead guilty to second-degree murder, which was open only from the time of his arrest until the trial information against him was filed, a period of ten days. Wanatee was subsequently convicted by a jury of first-degree murder, willful injury, and assault while participating in a felony. Two codefendants tried at the same time were acquitted. Wanatee is now serving a life sentence on the murder conviction.

Wanatee filed this action for *habeas corpus* relief pursuant to 28 U.S.C. § 2254 on June 9, 1997. In his petition for *habeas corpus* relief, Wanatee initially asserted three claims: (1) that the trial judge erred by admitting hearsay testimony at trial; (2) that the trial judge erred by failing to instruct the jury that willful injury was a lesser-included offense to murder in the first degree; and (3) that his trial counsel provided "ineffective assistance" during discussion of a plea offer that was available only until the trial information against him was filed. However, by order dated March 22, 1999, the undersigned accepted the magistrate judge's recommendation that Wanatee's first two claims fell outside the scope of *habeas* review, or that if they were otherwise reviewable, they had been procedurally defaulted; therefore, those claims were denied. *See Wanatee,* 39 F.Supp.2d at 1176.[1] Thus, Wanatee's petition for *habeas corpus* relief was allowed to proceed only on his "ineffective assistance" claim.

Upon *de novo* review of that claim, the court rejected the magistrate judge's characterization of Wanatee's claim as premised on an assertion that trial counsel was ineffective for failing to "talk Wanatee into" the plea agreement. *Id.* at 1169.

Instead, the court concluded that the claim, properly characterized, was that trial counsel failed to advise Wanatee properly on the law applicable to the charges against him, including the felony-murder rule, aiding and abetting liability, and joint criminal conduct, which Wanatee contended had prevented him from making an informed choice about accepting or rejecting the plea agreement. *Id.* at 1169–70.

As a consequence of the court's formulation of Wanatee's "ineffective assistance" claim, the court rejected the magistrate judge's conclusion that Wanatee had not established "deficient performance" of his trial counsel, the first prong of such a claim. Instead, this court held that trial counsel's performance was constitutionally deficient, in the circumstances known to counsel while the plea offer was available, in failing to advise Wanatee about the implications of the felony-murder rule, aiding and abetting liability, and liability for joint criminal conduct. *Id.* at 1176. However, the court stopped short of reversing the magistrate judge's conclusion as to the second prong of Wanatee's "ineffective assistance" claim, which requires proof of "prejudice" from counsel's deficient performance. *Id.* Instead, the court concluded that this matter should be remanded to the magistrate judge for reconsideration and/or rehearing of evidence concerning Wanatee's "prejudice," in light of the proper formulation of his claim. *Id.*

Pursuant to this court's directions, the magistrate judge held an evidentiary hearing on June 3, 1999, and entertained supplemental briefs on the issue of Wanatee's "prejudice." On April 21, 2000, the magistrate judge filed a Supplemental Report and Recommendation. In that Supplemental Report and Recommendation, the magistrate judge concludes that Wanatee has proved he would have accepted the plea offer, had he been properly advised about such matters as the felony-murder rule, aiding and abetting liability, and lia-

---

1. The court also accepted the magistrate judge's recommendation that a certificate of appealability pursuant to 28 U.S.C. § 2253(c) should be denied as to those two claims. *Id.*

bility for joint criminal conduct. The magistrate judge concludes further that Wanatee has proved that he could have satisfied the conditions of the plea agreement. Consequently, the magistrate judge concludes that Wanatee has established the necessary "prejudice" to sustain his claim, that is, he has shown that the result would have been different absent his counsel's ineffective assistance. The magistrate judge therefore recommends that, as appropriate relief, this court should enforce the plea agreement and allow Wanatee to plead guilty to second-degree murder.

On May 3, 2000, the respondent filed his objections to the magistrate judge's Supplemental Report and Recommendation, challenging each of the magistrate judge's principal conclusions. In addition, the respondent contends that Wanatee's "ineffective assistance" claim does not fall "within the scope of section 2254(d)," as that section was recently interpreted by the United States Supreme Court in *Williams v. Taylor*, — U.S. —, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *See* Respondent's Objections To Supplemental Report and Recommendation (Respondent's Objections) at 2. The respondent contends that this is so, because the state appellate court that heard the appeal in Wanatee's post-conviction relief (PCR) proceedings rejected Wanatee's "prejudice" argument on his "ineffective assistance" claim, because that court found that Wanatee actually had a fair trial after rejecting the proposed plea agreement, a finding the respondent asserts is not subject to federal *habeas* review under § 2254(d)(1). More generally, the respondent suggests that many of the magistrate judge's conclusions show a lack of the deference properly due the state court's factual findings or are simply unsupported by the record.

## II. LEGAL ANALYSIS

### A. Standard Of Review

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied,* 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk* ). However, the plain language of the statute governing review provides only for *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

Because objections have been filed in this case, the court must conduct a *de novo* review. The court has made the necessary review by examining the transcript of the evidentiary hearing on the "prejudice" prong of Wanatee's "ineffective assistance" claim, held before the magistrate judge on June 3, 1999, the pertinent state-court documents and transcripts in state and federal proceedings, all briefs and exhibits filed in these proceedings that pertain to the question of "prejudice," as well as the respondent's brief in support of his objections to the Supplemental Report and Recommendation.

### B. Viability Of Wanatee's Claim

The respondent first challenges the Supplemental Report and Recommendation on a legal ground that was not addressed by the parties or the magistrate judge prior to the filing of the Supplemental Report

and Recommendation: In his objections to the Supplemental Report and Recommendation, the respondent claims that, just days before the Supplemental Report and Recommendation was filed, the Supreme Court handed down an interpretation of 28 U.S.C. § 2254(d)(1) that bars Wanatee's "ineffective assistance" claim. The respondent contends that, in *Williams v. Taylor*, — U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Court held that a petitioner is not entitled to *habeas corpus* relief unless the state court's adjudication of the petitioner's claim falls "within the scope of section 2254(d)." *See* Respondent's Objections at 2. The respondent contends that Wanatee's "ineffective assistance" claim is barred by the Supreme Court's interpretation of § 2254(d)(1), because the decision of the Iowa Court of Appeals—which rejected Wanatee's "ineffective assistance" claim on the ground that Wanatee actually had a fair trial after rejecting the proposed plea agreement— does not fit the conditions specified in § 2254(d)(1). "In the same vein," the respondent contends that there is no constitutional right to a plea bargain. *Id.* Therefore, the court must consider the respondent's contention that § 2254(d)(1), as construed by the Supreme Court in *Williams*, somehow bars Wanatee's "ineffective assistance" claim.

### 1. The requirements of § 2254(d)(1)

Section 2254(d)(1) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, provides as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was *contrary to*, or involved *an unreasonable application of,* clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1) (emphasis added). As the United States Supreme Court explained in *Williams*, "[F]or [a petitioner] to obtain federal habeas relief, he must first demonstrate that his case satisfies the condition set by § 2254(d)(1)." *Williams*, — U.S. at ——, 120 S.Ct. at 1518.[2]

In *Williams*, the Supreme Court addressed the question of precisely what the "condition set by § 2254(d)(1)" requires. *See id.* at — — ——, 120 S.Ct. at 1503–1511 (Part II of the minority decision); *id.* at — — ——, 120 S.Ct. at 1518–23 (Part II of the majority decision).[3] In the portion of the majority decision on this point, the majority summarized its conclusions as follows:

[Section] 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied* —the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the

---

**2.** In a separate provision, the statute also provides for *habeas* relief when a state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). That provision was not at issue in *Williams*, nor have the parties asserted that it is pertinent here.

**3.** In *Williams*, the opinion of Justice Stevens obtained a 6–3 majority, except as to Part II, which is the pertinent part of the decision here. *See Williams*, — U.S. at ——, 120 S.Ct. at 1499. Justice O'Connor delivered the opinion of the Court as to Part II, in which she was joined by Chief Justice Rehnquist and Justices Kennedy, Thomas, and Scalia, thereby obtaining a 5–4 majority on this portion of the decision. *See id.*

United States." *Under the "contrary to" clause,* a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. *Under the "unreasonable application" clause,* a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at ——, 120 S.Ct. at 1523 (emphasis added); *see also Whitmore v. Kemna,* 213 F.3d 431, 433–34 (8th Cir.2000) ("It seems to us that § 2254(d) as amended by the AEDPA is unambiguous as to the scope of federal court review, limiting such review (at least as compared with past practice) in order to effect the intent of Congress to expedite habeas proceedings with appropriate deference to state court determinations. *See Williams v. Taylor,* 529 U.S. ——, ——, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389, —— (2000) (noting purposes of AEDPA amendments).").

The Court also clarified two other important definitions. First, the Court concluded that "unreasonable application" of federal law under § 2254(d)(1) cannot be defined in terms of unanimity of "reasonable jurists"; instead, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at ——, 120 S.Ct. at 1522. Consequently, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* Second, the Court clarified that "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision," and "the source of clearly established law [is restricted] to this Court's jurisprudence." *Id.* at 1523.

### 2. *Is Wanatee's claim reviewable under § 2254(d)(1)?*

The respondent contends that no federal *habeas* relief can be granted on Wanatee's "ineffective assistance" claim, because the state-court decision denying that claim does not fit either of the conditions set out in § 2254(d)(1). To decide whether the state appellate court's denial of Wanatee's "ineffective assistance" claim was "contrary to" or involved an "unreasonable application of" clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), this court turns to an examination of that state-court decision.

### a. *The state-court decision*

In post-conviction relief proceedings, in response to Wanatee's claim that his trial counsel had failed to advise him properly on what the Iowa Court of Appeals called "the plea issue," that court concluded as follows:

A defendant in a criminal case is entitled to competent counsel at the plea bargain stage. *See State v. Kraus,* 397 N.W.2d 671, 673 (Iowa 1986); *Meier v. State,* 337 N.W.2d 204, 208 (Iowa 1983). This is not a case where misadvice, if given, led to a guilty plea; rather, it is a case where misadvice, if given, led to a not guilty plea. There is a great difference between what happens to a defendant who pleads guilty as opposed to what happens when the plea is rejected. *See Johnson v. Duckworth,* 793 F.2d 898, 900 (7th Cir.1986); *Kraus,* 397 N.W.2d at 674.

*A pretrial tactical error does not lead to a reversal of a fair trial. See id. Consequently, the only issue we need address is whether Wanatee has shown that he did not have a fair trial.*

We have examined the other two issues raised and find Wanatee has failed

to show, even if trial counsel's challenged actions were error, *that there was a reasonable probability absent the alleged errors a fact finder would have a reasonable doubt concerning his guilt.* *See State v. Tracy,* 482 N.W.2d 675, 680 (Iowa 1992).

*There is no factual basis to support Wanatee's claim of ineffective assistance of counsel on these issues.* The trial court correctly granted the State's motion for summary judgment.

*Wanatee v. State,* No. 6–595/95–1521, slip op. at 3–4 (Iowa Ct.App. Dec. 20, 1996) (emphasis added). The respondent's contentions notwithstanding, this state-court decision is plainly no bar to relief under § 2254(d)(1).

### b. The "contrary to" condition

■ First, the decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Williams,* —— U.S. at ——, 120 S.Ct. at 1523 (the "contrary to" clause of the statute identifies the first of two distinct conditions for federal *habeas* relief). Indeed, it is difficult to conceive of a state-court decision that more clearly "arrive[d] at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law." *Williams,* —— U.S. at ——, 120 S.Ct. at 1523 (defining one kind of decision that fits the "contrary to" clause of § 2254(d)(1) in these terms). This is so, because the Iowa Court of Appeals applied a patently incorrect legal standard for determination of "prejudice" on a claim of "ineffective assistance of counsel." *See id.* at ——, 120 S.Ct. at 1520 ("A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.").

■ Under United States Supreme Court precedent, the standard for "prejudice" on Wanatee's claim is not, as the Iowa Court of Appeals expressed it, "whether Wanatee has shown that he did not have a *fair trial.*" *Wanatee,* No. 6–595/95–1521, slip op. at 4 (Iowa Ct.App.

Dec. 20, 1996) (emphasis added). Rather, as explained in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to establish the "prejudice" prong of such a claim, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding would have been different.*" *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (emphasis added). Furthermore, *Strickland*'s two-part test applies to ineffective assistance claims arising out of the plea process. *See Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Because the decision of the Iowa Court of Appeals did not apply the *Strickland* standard for "prejudice" to an "ineffective assistance" claim, the decision of the Iowa Court of Appeals "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," and thus stands as no bar to federal *habeas* review of Wanatee's claim. 28 U.S.C. § 2254(d)(1); *Williams,* —— U.S. at ——, 120 S.Ct. at 1523.

### c. The "unreasonable application" condition

■ Nor does the *Strickland* test for "prejudice" conflate in this case into the question, as posed by the Iowa Court of Appeals, of whether "there was a reasonable probability absent the alleged errors a fact finder would have a reasonable doubt concerning [Wanatee's] guilt." *See Wanatee,* No. 6–595/95–1521, slip op. at 4 (Iowa Ct.App. Dec. 20, 1996) (citing *Tracy,* 482 N.W.2d at 680). In *Tracy,* the case on which the Iowa Court of Appeals relied for this statement of the "prejudice" element, the alleged ineffectiveness of counsel occurred in the course of trial, when trial counsel allowed into the record, as a matter of trial strategy, otherwise inadmissible evidence. *See Tracy,* 482 N.W.2d at 680. Thus, in that case, whether "there [wa]s a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"—the proper *Strickland* standard for

"prejudice," *see Strickland,* 466 U.S. at 694, 104 S.Ct. 2052—might well have depended upon whether, absent counsel's errors, "there was a reasonable probability that [the petitioner] would have been acquitted." *Tracy,* 482 N.W.2d at 680. However, in Wanatee's case, where the ineffective assistance of counsel pertained to *pre*-trial plea bargaining, whether the "result of the proceeding would have been different" involves whether any trial would have taken place at all, not whether a fact finder would have had a reasonable doubt, after trial, about the defendant's guilt. *Compare Kingsberry v. United States,* 202 F.3d 1030, 1032 (8th Cir.2000) ("[P]rejudice is possible, notwithstanding a subsequent fair trial, where counsel failed to provide accurate advice regarding a plea agreement offer.") (citing *Engelen, infra* ), *petition for cert. filed,* (April 12, 2000) (No. 99–9048); *Engelen v. United States,* 68 F.3d 238, 241 (8th Cir.1995) (in addressing the "prejudice" prong of a claim of "ineffective assistance" during plea bargaining, the court "recognize[d] that a defendant, after rejecting the proposed plea bargain and receiving a fair trial, may still show prejudice if the plea bargain agreement would have resulted in a lesser sentence.").

Thus, even assuming *Tracy* was a correct application of the *Strickland* test for "prejudice" in the circumstances presented in *Tracy,* the application by the Iowa Court of Appeals of the *Tracy* standard was an "unreasonable application" of the law as stated in *Strickland* to the facts of Wanatee's case—that is, it was both "incorrect" and "unreasonable." *See* 28 U.S.C. § 2254(d)(1) (stating an "unreasonable application" alternative); *Williams,* —— U.S. at ——, 120 S.Ct. at 1523 (defining "unreasonable application" as a second, separate condition for federal *habeas* relief under § 2254(d)(1), that involves "the state court identif[ying] the correct governing legal principle from this Court's decisions but unreasonably appl[ying] that principle to the facts of the prisoner's case"); *id.* at 1522 (defining "unreasonable application" as both "incorrect" and objectively "unreasonable"). It was objectively unreasonable

for the Iowa Court of Appeals to apply in Wanatee's case a "prejudice" standard stated in terms of whether a fact finder would have had a reasonable doubt about the defendant's guilt—drawn from a case in which the "different result" would have been a jury's "not guilty" verdict—because the "different result" of plea bargaining in this case, absent counsel's deficient performance, is that the case would never have gone to a fact finder at all. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (the test of "prejudice" is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the *result of the proceeding would have been different*") (emphasis added). Thus, because the decision of the Iowa Court of Appeals also involves an "unreasonable application" of federal law, it stands as no bar to federal *habeas* review of Wanatee's "ineffective assistance" claim. 28 U.S.C. § 2254(d)(1); *Williams,* —— U.S. at ——, 120 S.Ct. at 1523.

### d. Other challenges

■ Two further points raised by the respondent in this part of his brief require discussion. First, the respondent's contention that there is no constitutional right to a plea bargain—while true, *see, e.g., Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."); *Nguyen v. United States,* 114 F.3d 699, 704 (8th Cir. 1997) ("There is no constitutional right to plea bargain.") (citations and internal quotation marks omitted)—is simply of no moment here. That contention misconstrues both Wanatee's claim and the applicable law. Wanatee has not asserted that he was denied a right to a plea bargain, only that he was denied a right to effective assistance of counsel during the pendency of the plea offer. Thus, the right Wanatee contends was violated was the "clearly established" right to effective assistance of counsel during discussion of a plea offer, *see Hill,* 474 U.S. at 57, 106 S.Ct. 366

(*Strickland*'s two-part test applies to ineffective assistance claims arising out of the plea process), not a non-existent "right" to a plea bargain.

Second, *Johnson v. Duckworth,* 793 F.2d 898 (7th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986), upon which both the Iowa Court of Appeals and the respondent here have relied, is not to the contrary, and indeed, sheds very little light on any issue presented here. The *Johnson* decision recognizes that a criminal defendant has a right to effective assistance of counsel in the course of considering a plea offer, *see Johnson,* 793 F.2d at 900–02, and standing for that proposition, the decision is in accord with *Hill,* 474 U.S. at 57, 106 S.Ct. 366. However, the respondent and the Iowa Court of Appeals quoted from *Johnson* that court's statement that "[t]here is a vast difference between what happens to a defendant when he pleads guilty as opposed to what occurs when a plea agreement is rejected." *Id.* at 900. The Iowa Court of Appeals and the respondent assert that this statement supports the contention that a defendant who rejects a plea agreement, even as the result of ineffective assistance of counsel, cannot show prejudice if he subsequently receives a fair trial. *See* Respondent's Objections at 2 & n. 1 (quoting this portion of *Johnson* ); *Wanatee,* No. 6–595/95–1521, slip op. at 3 (Iowa Ct.App. Dec. 20, 1996) (citing *Johnson* for this proposition).

Yet both the respondent and the Iowa Court of Appeals have taken the quotation from *Johnson* out of context: The language quoted from *Johnson* was used to distinguish United States Supreme Court precedent that sets out a defendant's right to make the final decision regarding a plea of guilty, *in the process of determining whether counsel's conduct in Johnson's case—rejecting a plea offer without Johnson's consent—had been constitutionally deficient. See Johnson,* 793 F.2d at 900–01 (distinguishing *Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *Brookhart v. Janis,* 384 U.S. 1, 7, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966)). Thus, the quoted language was

relevant to the "deficient performance" prong of Johnson's "ineffective assistance" claim. In fact, the court in *Johnson* never reached the "prejudice" prong of the petitioner's "ineffective assistance" claim, but instead held that, "[u]nder the unique circumstances of this case, we believe that attorney Carmouche acted reasonably ... and that Johnson's right to effective assistance of counsel was not compromised." *See id.* at 902. Consequently, *Johnson* is almost wholly inapposite here, when the sole question before the court is whether Wanatee can prove the necessary "prejudice" to sustain his "ineffective assistance" claim.

### e. Summary

This court concludes that the decision of the Iowa Court of Appeals rejecting Wanatee's "ineffective assistance" claim is both "contrary to" and involves an "unreasonable application" of clearly established federal law, as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams,* —— U.S. at ——, 120 S.Ct. at 1523. Therefore, that decision stands as no bar to federal *habeas* relief, if Wanatee can otherwise establish the "prejudice" element of his "ineffective assistance" claim. *Id.; Williams,* —— U.S. at ——, 120 S.Ct. at 1523.

### C. Wanatee's "Prejudice"

The court therefore turns to *de novo* consideration of the "prejudice" prong of Wanatee's "ineffective assistance" claim. To establish the necessary "prejudice," Wanatee must show that "there is a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding would have been different." Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (emphasis added). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In the ruling regarding the magistrate judge's first Report and Recommendation in this case, this court concluded that, "when the claim of ineffective assistance

involves rejection of a plea bargain, 'after rejecting the proposed plea bargain and receiving a fair trial, [the claimant] may still show prejudice if the plea bargain agreement would have resulted in a lesser sentence,' *and* the claimant shows that 'but for counsel's advice, he would have accepted the plea.' " *Wanatee,* 39 F.Supp.2d at 1173 (quoting *Engelen v. United States,* 68 F.3d 238, 241 (8th Cir.1995)); *accord Kingsberry,* 202 F.3d at 1032 ("[P]rejudice is possible, notwithstanding a subsequent fair trial, where counsel failed to provide accurate advice regarding a plea agreement offer.") (citing *Engelen* ). This court affirmed the magistrate judge's conclusion that Wanatee can satisfy the requirement that " 'the plea bargain agreement' would have resulted in a lesser sentence,' " *Id.* at 1174 (again quoting *Engelen* ), leaving open the question of whether Wanatee could show that, but for counsel's advice, he would have accepted the plea. *Id.*

■ However, in addition to making a "would have accepted" analysis, the magistrate judge considered whether Wanatee has shown that he "could have performed" the plea agreement's conditions, had he agreed to it, as a necessary element of his showing of "prejudice." *See* Supplemental Report and Recommendation at 8–14. Although this requirement was not stated in *Engelen,* 68 F.3d at 240–41, upon which this court principally relied, it was discussed in another pertinent decision of the Eighth Circuit Court of Appeals, *United States v. Ayd,* 25 F.3d 624 (8th Cir.1994). In *Ayd,* the petitioner asserted that his trial counsel rendered him ineffective assistance, because counsel never communicated to him an offer to plead guilty in return for a ten-year sentence on federal drug conspiracy charges. *Ayd,* 25 F.3d at 625. The court's discussion of the "prejudice" prong of this "ineffective assistance" claim included the following:

> Under the familiar *Strickland v. Washington,* 466 U.S. 668, 688, 692, 104 S.Ct. 2052, 2065, 2067, 80 L.Ed.2d 674 (1984), standard, Ayd must show that his attorneys' performance fell below an objective standard of reasonableness and that he suffered prejudice as a result of the deficient performance. *Ayd has failed to show that he suffered prejudice here because he has not shown that he could perform the conditions of the offer.* Because each condition was a prerequisite to Ayd's ability to accept the offer, [trial] counsel's failure to send him the letter containing the ten-year offer did not prejudice Ayd.

*Ayd,* 25 F.3d at 626 (emphasis added). Thus, the magistrate judge properly considered in Wanatee's case whether Wanatee has shown that he "could have performed" the plea agreement, had he accepted it.

■ Furthermore, the court finds that there is yet another—indeed, antecedent—question that must be addressed in more detail on *de novo* consideration of the record, in part as a consequence of the respondent's objections, and in part as a consequence of a recent decision of the Eighth Circuit Court of Appeals on a similar "ineffective assistance" claim. In *Kingsberry v. United States,* 202 F.3d 1030 (8th Cir.2000), the Eighth Circuit Court of Appeals was also confronted with an "ineffective assistance" claim premised on counsel's failure to provide accurate information about pertinent law from which the petitioner could evaluate the offer of a plea agreement, specifically, proper information concerning sentencing exposure as a "career offender." *Kingsberry,* 202 F.3d at 1032. In the circumstances presented, the court stated, "Logic dictates … that to establish … prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the government." *Id.*

Therefore, the court's *de novo* review of Wanatee's showing of "prejudice" begins with the question of "whether a plea agreement was formally offered by the government." *Id.* If the answer to this question is affirmative, then the court will turn to the question of whether Wanatee "would have accepted" the plea agreement

offered, if properly advised by counsel about the law applicable to the charges against him. *See Engelen,* 68 F.3d at 241. Finally, if the court concludes that Wanatee "would have accepted" the plea agreement offered, the court must consider whether Wanatee "could have performed" the agreement, if he had accepted it. *Ayd,* 25 F.3d at 626.

### 1. Whether a plea agreement was formally offered by the government

When the Eighth Circuit Court of Appeals confronted the question of whether the petitioner in *Kingsberry* could prove "that a plea agreement was formally offered by the government," *Kingsberry,* 202 F.3d at 1032, the court was presented with conflicting evidence on that question. The parties in *Kingsberry* agreed only that, prior to trial, the petitioner made a proffer regarding related criminal activity "in an effort to initiate plea agreement negotiations." *Id.* at 1031. The respondent and the petitioner's trial counsel both denied that any formal plea offer was subsequently made by the government, because, they asserted, after investigation, the government concluded that the petitioner had been uncooperative and untruthful in his proffer. *Id.* In contrast, the petitioner and his wife contended that the government had made a formal plea offer after the petitioner made his proffer and that the plea offer was communicated to the petitioner by trial counsel. *Id.* The Eighth Circuit Court of Appeals resolved this dispute, even though the district court had not held an evidentiary hearing on the issue, by finding that the veracity of petitioner's supporting affidavits was sufficiently called into question by various inconsistencies that those affidavits were nothing more than self-serving statements, and, as such, were insufficient to generate a genuine issue of material fact as to the existence of a plea offer. *See id.* at 1033. *But see id.* at 1033–35 (Richard Arnold, C.J., dissenting) (supposed "inconsistencies" were insufficient basis to deny the petitioner an evidentiary hearing). Thus,

the very existence of any plea offer was at issue in *Kingsberry.*

Here, unlike *Kingsberry,* the respondent does not directly assert that the prosecution never made a plea offer to Wanatee. Rather, the respondent objects to the magistrate judge's references to "*the* plea offer," contending that the proper formulation is "*a* plea offer," because "use of the word 'the' presupposes that there was a plea offer on the table *that Wanatee could have accepted.*" Respondent's Objections at 3–4 (emphasis added). The respondent contends that this determination "is inextricably intertwined with analysis of [the] question [of] whether Wanatee could have satisfied the prosecution's conditions for the proposed plea agreement." *Id.* at 4

Beneath the semantic games, there may indeed be valid concerns, because this court believes that the *Kingsberry* decision requires Wanatee to show that the purported plea offer was actually made as part of his showing of "prejudice" on his "ineffective assistance" claim. *See Kingsberry,* 202 F.3d at 1032 ("Logic dictates . . . that to establish . . . prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the government."). However, the court also believes that the respondent has "inextricably intertwined" three separate questions by arguing that whether "there was a plea offer on the table that Wanatee could have accepted. . . . is inextricably intertwined with analysis of [the] question [of] whether Wanatee could have satisfied the prosecution's conditions for the proposed plea agreement." Respondent's Objections at 3–4.

Rather than depending upon "inextricably intertwined" questions, the court finds that Wanatee's showing of "prejudice" depends upon three questions involving distinct kinds of evidence. The first question, whether an offer was made, depends upon evidence about the prosecutor's conduct, *i.e.,* evidence that the prosecutor made (or did not make) a written or oral plea offer. *See Kingsberry,* 202 F.3d at 1031 (consid-

ering evidence of the prosecutor's conduct to determine whether a formal plea offer was ever made). It does not depend upon evidence that Wanatee would or could have performed the terms of any plea agreement offered. The second question, whether Wanatee would have accepted the offer absent deficient performance of counsel, depends, in the circumstances of this case, upon whether Wanatee would have accepted any offer that required him to cooperate with the prosecution, even if he had been properly advised by trial counsel of the law applicable to the charges against him. *See Engelen,* 68 F.3d at 241 (to satisfy this requirement, the claimant must show with something more than "non-conclusory evidence" that he would have agreed to the plea bargain, "if properly advised"). In other words, the second question depends upon evidence of *Wanatee's* conduct and circumstances. The third question, whether Wanatee could have performed the agreement, depends upon evidence of the terms of the plea agreement offered and evidence showing whether Wanatee could (or could not) have provided the specific cooperation those terms required. *See Ayd,* 25 F.3d at 626–27 (considering evidence of what the terms of the plea agreement required and what information the defendant knew or could have supplied). In other words, the answer to the third question depends upon evidence of what Wanatee knew about the involvement of others in DeCora's beating and death, and whether the government would have considered that information sufficient to allow its contingent plea offer to come to fruition by allowing Wanatee to plead guilty to second-degree murder.

Moreover, the court does not construe the respondent's objection to the magistrate judge's reference to "the plea agreement" instead of "a plea agreement" to be an objection to the *existence* of a plea offer to plead guilty to second-degree murder if Wanatee agreed to "cooperate." The respondent has never previously denied that Wanatee was offered the opportunity to plead guilty to second-degree murder, if he agreed to "cooperate" with the prosecution

before the trial information was filed. To the extent the respondent now attempts to raise such an objection, that objection is overruled.

█ It is undisputed that there was no written offer of a plea agreement and that no written plea agreement was ever prepared or executed. *See, e.g.,* Testimony of Trial Counsel, Federal Habeas Proceedings, Hearing June 5, 1998 (First Habeas Hearing), p. 32, l. 25 to p. 33, l. 5; Testimony of Prosecutor, Federal Habeas Proceedings, Hearing June 3, 1999 (Second Habeas Hearing), p. 13, l. 14 to p. 14, l. 22. Nevertheless, it is clear from the record that Wanatee's trial counsel initiated plea negotiations shortly after Wanatee was arrested by asking the prosecutor in charge for a plea offer, and that an oral plea offer—under which Wanatee would be allowed to plead guilty to second-degree murder if he cooperated adequately with the prosecution—was then made by the prosecutor, with a deadline for acceptance before the trial information was filed. *See, e.g.,* Deposition of Trial Counsel, State Post–Conviction Relief Proceedings, June 27, 1995 (Trial Counsel's PCR Deposition), p. 3, l. 12 to p. 4, l. 15; Testimony of Trial Counsel, First Habeas Hearing, at p. 8, l. 17 to p. 9, l. 10 & p. 10, ll. 5–10; Testimony of Trial Counsel, Second Habeas Hearing, p. 54, ll. 4–16; Testimony of Prosecutor, Second Habeas Hearing, at p. 13, l. 14 to p. 14, l. 22. What is also clear, from the portions of the record cited above, and additional testimony concerning the plea negotiation process in Wanatee's criminal case, *see* Testimony of Trial Counsel, Second Habeas Hearing, at p. 33, l. 12 to p. 34, l. 10, is that, based on their long working relationship and mutual understanding of a "shorthand" negotiation process, trial counsel and the prosecutor both understood that the plea agreement, even if accepted by Wanatee, was contingent upon Wanatee providing sufficiently useful cooperation, or the offer would be "withdrawn."

Thus, the plea process in Wanatee's case contemplated the following: (1) the state's offer of a plea agreement under which

Wanatee would be allowed to plead guilty to second-degree murder in return for his adequate "cooperation" (the contingent offer); (2) Wanatee's acceptance of the offer before the trial information was filed (the acceptance); (3) Wanatee's proffer of information; (4) the state's evaluation of the adequacy and truth of the proffered information; and (5) either withdrawal of the plea agreement, based on inadequate cooperation, or completion of the agreement with the state's acceptance of Wanatee's plea, and Wanatee's further cooperation.

This negotiation process is different from that employed in *Kingsberry.* In *Kingsberry,* the defendant first made a proffer of information in an attempt to initiate plea negotiations, the government found the proffer inadequate, and the court found that the government had made no formal plea offer in response to the defendant's proffer of information. *See Kingsberry,* 202 F.3d at 1031. In Wanatee's case, on the other hand, the acceptance of the government's plea offer by the defendant would have preceded the defendant's proffer of information, even though the agreement offered was contingent upon the government's conclusion that Wanatee's subsequent proffer was adequate, or the plea offer would be "withdrawn." The process in Wanatee's case broke down at step two, when Wanatee failed to accept the offer as the result of ineffective assistance of counsel (contingent offer by the state, but no acceptance by the defendant). Nevertheless, *performance* of the plea agreement was to begin with step three, when Wanatee would have made his proffer of information. The significance of this conclusion is that it highlights the distinction between the questions of whether an offer was made and whether Wanatee would have accepted the plea offer, and the further distinction between the questions of acceptance of the plea offer and Wanatee's ability to perform the terms of the offer adequately. The

preceding discussion also shows that, contrary to the respondent's assertions, the adequacy of Wanatee's proffer is not relevant to the question of whether the prosecutor made a plea offer, because the plea offer preceded any proffer of information by Wanatee.

In this case, the court finds that the prosecutor undoubtedly made a plea offer to Wanatee to plead guilty to second-degree murder, albeit an offer contingent upon Wanatee providing adequate "cooperation." Therefore, the initial requirement of *Kingsberry,* "that to establish ... prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the government," *Kingsberry,* 202 F.3d at 1032, has been satisfied in Wanatee's case.

### 2. Whether Wanatee would have accepted the plea offer

▇ The court turns next to the second question in the analysis, whether Wanatee "would have accepted the proffered agreement," if he had been properly advised by trial counsel of the law applicable to the charges against him. As this court explained above, the answer to this second question depends, in the circumstances of this case, upon whether Wanatee would have accepted any offer that required him to cooperate with the prosecution, even if he had been properly advised by trial counsel of the law applicable to the charges against him. In other words, the answer to this question depends upon evidence of *Wanatee's* conduct and circumstances. This is so, because, when a claim of ineffective assistance involves rejection of a plea bargain, "after rejecting the proposed plea bargain and receiving a fair trial, [the claimant] may still show prejudice if the plea bargain agreement would have resulted in a lesser sentence," *and* the claimant shows that "but for counsel's advice, he would have accepted the plea." *Engelen,* 68 F.3d at 241.[4] The claimant

4. There is, as this court noted in its prior ruling, no serious question under Iowa law that a sentence of fifty years for second-degree murder, with a possibility of parole, pursuant to the proffered plea agreement, is a "lesser sentence" than a sentence of life with-

must make the latter showing with something more than self-serving statements; instead, he "must present credible, nonconclusory evidence that he would have pled guilty had he been properly advised." *Id.*

The respondent objects to the magistrate judge's conclusion that Wanatee would have accepted the prosecutor's offer to plead guilty to second-degree murder, because the respondent contends that Wanatee consistently resisted pleading guilty under a plea agreement that required *any* cooperation with the prosecution, even after he was properly advised on the law applicable to the charges against him. The respondent specifically contends that the magistrate judge failed to consider evidence that Wanatee told his counsel that he did not want "to become a snitch" when Wanatee was first presented with the plea offer, and that he told a law enforcement officer that " '[h]e would not name the individuals who had been with him for fear of being called a snitch in the penitentiary.' " Respondent's Objections at 6 (quoting Report of Sergeant Kern, Additional State–Court Documents No. 10, at 2–3). As to Wanatee's after-the-fact assertions that he would have accepted the plea agreement, if properly advised, the respondent contends that Wanatee was "equivocal," because he stated only that he would have "considered" accepting the plea agreement if properly advised. The respondent also contends that Wanatee's after-the-fact statements are merely self-serving, and thus insufficient to carry his burden on this question. In reaching a contrary conclusion, the respondent also contends that the magistrate judge disregarded evidence that Wanatee told his counsel that one named suspect was not involved, that Wanatee did not know two other persons the police had named as suspects, and that his admissions about the conduct of others, when made, indicated that they only threw "a punch or two" at DeCora. The respondent contends that there is simply no credible, objective evidence that Wanatee would have accepted the plea offer. Finally, the respondent contends that the magistrate judge improperly applied a "reasonable person" standard to the question of whether Wanatee would have accepted the plea offer, if properly advised, in the circumstances in which he found himself, when the proper standard, the respondent contends, is "necessarily" a subjective test, *i.e.*, what Wanatee himself would have done.

### a. Is the standard objective or subjective?

■■■ Taking the issue of the appropriate standard first, according to the Eighth Circuit Court of Appeals, "[t]o establish prejudice, . . . the [petitioner] must show that, but for his counsel's advice, he would have accepted the plea." *Engelen,* 68 F.3d at 241. This reads like a subjective standard, in that it appears to consider what this petitioner would have done. However, the respondent's citation to nearly identical language in *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), is the undoing of his argument. In *Hill,* a case in which improper advice purportedly led the petitioner to *accept* rather than *reject* the plea offer, the Court stated, "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. The Court explained that the answer to this question depends upon the "likelihood" that different advice would have led the decisionmaker to change his decision. *Id.* (citing examples). The Court then stated, "As we explained in *Strickland v. Washington, supra, these predictions* of the outcome at a possible trial, where necessary, *should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' " Id.* at 59–60, 106 S.Ct. 366 (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052)

out parole for a conviction of first-degree murder. *See Wanatee,* 39 F.Supp.2d at 1174.

(emphasis added). Thus, contrary to the respondent's assertion, the test is indeed an objective one, what a "reasonable" defendant would have decided to do, had he been given proper advice, "without regard for the 'idiosyncracies of the particular decisionmaker.'" *Id.*

### b. *Evidence of Wanatee's unwillingness to cooperate*

The respondent·is correct that the record is replete with evidence that Wanatee did not want to cooperate with the prosecution, before the trial information was filed and the plea offer expired, including evidence of his comments to his trial counsel and Sergeant Kern that he did not want to cooperate. *See* Sergeant Kern Report (Additional State–Court Documents, No. 10) at 2–3. However, this court concluded in its prior ruling, and reaffirms here, that such evidence is of little probative value, because the record shows only Wanatee's subjective conduct *in the absence of the proper advice,* when the question is what Wanatee would have done *had he been properly advised. Wanatee,* 39 F.Supp.2d at 1174 (citing *Engelen,* 68 F.3d at 241) (emphasis added in the ·prior ruling). The respondent contends that evidence of trial counsel's failure to provide proper advice "is relevant only to the breach of duty issue previously ruled on by the District Court, and irrelevant to the prejudice question as to whether Wanatee would have accepted a plea offer." Respondent's Objections at 8. However, this objection is overruled. The evidence of counsel's failure to advise Wanatee of the law applicable to the charges against him while the plea offer was pending is plainly relevant to this prong of the analysis, because, as is made clear in *Hill,* the question is, what is the "likelihood" that the proper advice would have led the decisionmaker to a different decision. *See Hill,* 474 U.S. at 59–60, 106 S.Ct. 366 (giving examples). The lack of proper advice colors every aspect of Wanatee's conduct prior to the expiration of the plea offer, and is therefore relevant to this prong of the analysis. Thus, "uncontro-·

verted evidence from trial counsel himself that he did not inform Wanatee about the felony-murder rule" constitutes objective evidence that, with proper advice, there is a reasonable probability that Wanatee would have accepted the plea offer. *See id.* at 1175 (citing *Paters v. United States,* 159 F.3d 1043, 1047–48 (7th Cir.1998), which holds that evidence that the petitioner had been misinformed about the applicable law constituted objective evidence that, but for improper advice, there was a reasonable probability that the petitioner would have accepted a plea offer). On the other hand, Wanatee's actual conduct in the absence of the proper advice is not very probative on this issue.

However, the respondent also contends, and the court acknowledges, that Wanatee also reaffirmed his reluctance to cooperate with the prosecution even after he was properly advised of the law applicable to the charges against him. Even so, that evidence does not demonstrate that Wanatee would not have accepted the plea offer prior to its expiration, if he had been properly advised sooner. Again, that evidence shows only Wanatee's conduct in the absence of any pending plea offer. At that point, Wanatee was aware that he almost certainly faced a prison term, and his continued reluctance to cooperate simply demonstrates his continued fear of being branded a "snitch" in prison, when there was no offsetting opportunity—in the form of a "live" plea offer—to avoid or reduce his prison term. Wanatee appeared to ``have nothing to gain by indicating a willingness, to cooperate, when his counsel's repeated attempts to get some kind of renewed plea offer on the table had been rebuffed, and Wanatee's counsel had never even informed Wanatee that he was continuing such overtures. Again, the question properly before the court is what Wanatee would have done had he received proper advice on the law while a "live" plea offer was pending in the days before the trial information was filed. The evidence of Wanatee's unwillingness to cooperate, in the absence of proper advice or a

"live" plea offer, to which the respondent points, simply isn't probative on this question, and thus is not enough to require a finding that Wanatee would not have accepted the plea agreement offered by the prosecution.

### c. Credible, non-conclusory evidence

The respondent is correct that Wanatee's after-the-fact assertions that he would have accepted the plea offer, if properly advised on the law, are not enough, standing alone, to satisfy this prong of the analysis. The court reached the same conclusion in its prior ruling, see Wanatee, 39 F.Supp.2d at 1174—although the court also noted that such statements are direct, and unequivocal assertions that Wanatee would indeed have pleaded guilty to second-degree murder, and would indeed have provided testimony identifying others involved in the crime, thus distinguishing Wanatee's case from the circumstances in Engelen, 68 F.3d at 241, a case in which the defendant made no such assertions. The real question thus is whether there is other credible, non-conclusory evidence that Wanatee would have pleaded guilty had he been properly advised. Id. (again citing Engelen, 68 F.3d at 241).

In its prior ruling, this court identified some of the necessary credible, non-conclusory evidence, which the respondent simply ignores in his objections:

> [T]he circumstances are distinguishable from those found insufficient to establish a question on prejudice in Engelen, because the record here is not "completely barren of any evidence that [Wanatee] would have acknowledged his guilt prior to trial." Id. Wanatee mounted an essentially "legal" defense to first-degree murder—intoxication—attempting to negate an element of the crime, as opposed to an assertion of innocence. Compare id. The circumstances are also distinguishable from those found insufficient by other circuit courts of appeals, because there is no suggestion that Wanatee lied to avoid liability, compare Jones v. United States, 161 F.3d 397, 401 (6th Cir.1998); nor has Wanatee made the

implausible assertion that he would simply have "cut his losses" upon proper legal advice, even though the state's case was weak, compare Jones v. Wood, 114 F.3d 1002, 1012 (9th Cir.1997), because the state's case here was remarkably strong.

\* \* \* \* \* \*

> [O]nce the proffer of the chance to plead to second-degree murder was foreclosed, Wanatee mounted a defense—intoxication—that would at best have garnered him a conviction for second-degree murder. This suggests that, but for the lack of proper advice prior to the filing of the trial information, Wanatee would have accepted a plea to second-degree murder as a "best case" scenario.

Wanatee, 39 F.Supp.2d at 1174–75. The court reaffirms its conclusion that this evidence points strongly to the conclusion that, if properly advised before the trial information was filed, Wanatee would have accepted the plea offer.

The respondent does take issue with the magistrate judge's (and this court's) reliance on United States v. Gordon, 156 F.3d 376, 381 (2d Cir.1998), as identifying objective evidence that is also present here. The respondent asserts that the magistrate judge improperly relied on Gordon, when he concluded that, based on the great disparity in sentence between the plea offered and Wanatee's sentence for first-degree murder, Wanatee's " 'only logical choice would have been to accept the plea offer,' " and that " 'it is almost inconceivable that had Wanatee been informed fully . . . he would have gone forward with a trial. . . .' " Respondent's Objections at 8 (citing the Supplemental Report and Recommendation at 6 & 8). The respondent contends that Gordon is distinguishable, because trial counsel in that case affirmatively misrepresented the petitioner's sentencing exposure, but Wanatee has never claimed he was not properly advised of the reduced sentence available under the plea agreement.

The court finds that the respondent has pointed to a distinction without a difference. Although Wanatee was aware of the difference in sentences between first- and second-degree murder, he was not informed of the law that made his conviction for first-degree murder, and consequent life sentence, not only possible, but highly probable. Thus, the "great disparity" between his actual maximum sentence exposure, a mandatory life sentence for first-degree murder, and the sentence available for second-degree murder under the plea agreement is still objective evidence that, "but for counsel's advice, [Wanatee] would have accepted the plea." *Engelen,* 68 F.3d at 241; *cf. Gordon,* 156 F.3d at 381 (noting that the "great disparity" in sentence between the exposure described by trial counsel and the actual sentence that was likely for the offense charged was evidence that the defendant would have accepted the plea offer if properly advised). Furthermore, as this court also noted in its prior ruling, "the applicability of the felony-murder rule in the circumstances known to trial counsel while the offer was open was so apparent as to make an offer of the chance to plead to second-degree murder seem to a person properly advised on the law to be an absolute gift." *Wanatee,* 39 F.Supp.2d at 1175.

Finally, the court is not persuaded by respondent's contentions that the magistrate judge improperly disregarded, at this stage of the analysis, evidence that Wanatee told his counsel that one named suspect was not involved, that Wanatee did not know two other persons the police had named as suspects, and that his admissions about the conduct of others, when made, indicated that those persons only threw "a punch or two" at DeCora. These assertions reflect the respondent's "blurring" of distinct inquiries. This evidence may be pertinent to the next, "could have performed" part of the analysis, which depends largely on whether Wanatee could have provided sufficient information to constitute adequate cooperation, but it is not relevant here.

Therefore, the court concludes that Wanatee has also satisfied the second prong of the "prejudice" analysis by showing the he "would have accepted" the plea agreement offered, if properly advised by counsel about the law applicable to the charges against him. *See Engelen,* 68 F.3d at 241.

### 3. Whether Wanatee could have performed the proffered plea agreement

The court must now turn to the last, and most highly contentious, of the prongs of the "prejudice" analysis in this case, whether Wanatee "could have performed" the plea agreement offered by the prosecution. *See Ayd,* 25 F.3d at 626. This remaining question turns on what "cooperation" was required under the terms of the plea agreement and whether the information Wanatee could have provided about the attack on DeCora was sufficient to satisfy the terms of the agreement. *See id.* at 626–27 (considering evidence of what the terms of the plea agreement required and what information the defendant knew or could have supplied).

The respondent contends that the record establishes that the prosecution agreed to reduce the charge against Wanatee to second-degree murder only in exchange for full cooperation in providing information likely to result in the conviction of the person or persons involved in DeCora's murder, particularly the person who stabbed DeCora, not just truthful testimony about persons generally involved in the attack on DeCora, as the magistrate judge concluded. Thus, the respondent contends that information about who was involved in the *assault* was inadequate; what was required was information about who was involved in the *murder.* The respondent contends that investigators had sufficient information to identify the likely stabber during the period the plea offer was open to Wanatee, so that anything less than evidence corroborating their identification of the stabber was of little use to them.

The respondent also contests the magistrate judge's implicit conclusion that Wanatee would have been able to proffer "truthful" testimony that met the conditions of the plea agreement, because Wanatee denied knowledge of the identity of the person who stabbed DeCora and asserted that he was too intoxicated to remember events clearly. Some of the respondent's contentions—that Wanatee told his counsel that one named suspect was not involved, that Wanatee did not know two other persons the police had named as suspects, and that his admissions about the conduct of others, when made, indicated that those persons only threw "a punch or two" at DeCora—although raised in relation to the second prong of the "prejudice" analysis, are more pertinent here to the issues of what information Wanatee could have provided and whether that information was sufficient to satisfy the "cooperation" terms of the plea agreement.

The court readily admits that the issue of whether Wanatee could have offered sufficient "cooperation,"—i.e., truthful and adequate information that would have prevented the government from withdrawing its contingent plea offer—is a close one. However, the court concludes that there are two primary flaws in the respondent's contentions. First, the respondent's contentions are colored too much by "perfect hindsight," without sufficient regard to the circumstances as they existed almost a decade ago, during the brief period the plea agreement was open, and shortly thereafter, when the prosecution was attempting to assemble enough evidence to convict other persons who participated in the assault of murdering DeCora—an attempt that ultimately failed. Second, the respondent's contentions lose sight of the applicable standard, which is whether there was a "reasonable probability"—not an "absolute certainty"—that Wanatee could have performed the plea agreement. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052 (the question on the "prejudice" prong is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

### a. Terms of the plea agreement

The court begins its consideration of this last prong in the "prejudice" analysis of Wanatee's "ineffective assistance" claim by determining from a de novo review of the evidence what cooperation was required under the terms of the plea agreement. The court acknowledges that, nine years after the fact, the prosecutor involved in the plea negotiations testified that the plea agreement required Wanatee to provide "truthful testimony and testimony or evidence that would likely result in the conviction particularly of the person who did the stabbing." Testimony of Prosecutor, Second Habeas Hearing, at p. 14, ll. 3–9; see also id. at p. 14, ll. 12–19 ("[T]he testimony or evidence that Elias Wanatee would have to provide would likely result in the conviction of the people involved in the death of Kelton DeCora, particularly the stab wound."). The prosecutor also asserted that Wanatee's statement, in an affidavit, that he would have testified that three named persons were present while he was assaulting DeCora, but that he did not know who stabbed DeCora "would not have satisfied the conditions of the proposed plea agreement, and we would not have considered Elias Wanatee to have in any way cooperated in providing his end of the plea agreement." Id. at p. 16, ll. 12–22. The prosecutor's contention was apparently based on his belief that Wanatee must have known who did the stabbing. See id. at p. 18, ll. 1–3 ("[I]t was my belief that Mr. Wanatee, because of his position in the commission of the crime, would have had to have known who the stabber was."); id. at p. 28, ll. 13–16 ("But nowhere in the statement that [Wanatee's habeas counsel] gave us does it indicate that Elias Wanatee knows who did the stabbing. And to my mind, that's incredible. I don't believe that Elias Wanatee would not know who did the stabbing.").

However, even the prosecutor's latter-day testimony about what would have satisfied the terms of the plea agreement was not always so categorical about the necessity that Wanatee identify "the stabber." The prosecutor acknowledged that several other people were involved in the assault on DeCora, and that he and his investigators "would have been very interested in knowing who the perpetrators of the assault were." *Id.* at p. 22, ll.9–22. He also defined information he would have considered valuable enough to give Wanatee a plea agreement to include information "that would result in the conviction of the other participants," without limitation to "the stabber" or "participants in the murder," *see id.* at p. 25, ll. 3–6, and he stated that "[w]e would have rejected [a hypothetical] proffer of testimony because it doesn't indicate to us who did the stabbing, *or it doesn't provide to us information that would lead to the stabbing.*" *Id.* at p. 28, ll. 7–10 (emphasis added).[5] The prosecutor also admitted, albeit grudgingly, that various kinds of information would "probably" have been helpful in the investigation of the case and the prosecution of the co-defendants, who were in fact acquitted, including the following: the identity of all of the perpetrators in the assault, a matter still under investigation when the plea offer was made to Wanatee, *see id.* at p. 19, ll. 8–23; information regarding the prior beating of Wanatee and his uncle, as a motive for the attack on DeCora, and who else knew about that beating, *see id.* at p. 20, l. 6, to p. 21, l. 11; information that accomplices were aware of Wanatee's animus toward DeCora, *see id.* at p. 21, ll. 12–16; information about persons with whom Wanatee discussed a "payback" for his prior beating, *see id.* at p. 21, ll. 17–20; information about persons with whom Wanatee discussed a plan for attacking DeCora on the night DeCora was killed, *see id.* at p. 21, ll. 21–25; and information about the presence of two named suspects in the

area at the time of the attack, *see id.* at p. 22, ll. 1–8. Thus, there is a "reasonable probability" that evidence that "would lead to the stabb[er]," including evidence of who the other participants in the assault were, would have satisfied the terms of the plea agreement, even under the prosecutor's current recollection of those terms. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (the question on the "prejudice" prong is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

The court's conclusion concerning the terms of the plea agreement does not rest solely on the negotiating prosecutor's recollections, however, but also on the recollections of Wanatee's trial counsel. The court recognizes that Wanatee's trial counsel's most recent testimony suggests that he now shares the prosecutor's fixation on a requirement of evidence concerning "the stabber." Trial counsel's most recent testimony includes a statement that he "would certainly have presented ... to the county attorney" Wanatee's proposed testimony concerning who was present during the attack on DeCora along with the statement that Wanatee was drunk and did not know exactly who did the stabbing, but counsel "d[id]n't believe that it would have satisfied the terms of the plea agreement," because his "understanding is the county attorney wanted information that would lead to a conviction of the person who did the stabbing," and "[w]ithout that information [counsel] did not believe that the county attorney would accept the offer that Mr. Wanatee has proposed [in the *habeas* proceedings]." Testimony of Trial Counsel, Second Habeas Hearing, at p. 59, ll. 5–18. Nevertheless, trial counsel's testimony, even in the most recent hearing, did not always reflect these specific requirements under the plea agreement. When asked directly what he understood the conditions

<hr>

5. The prosecutor added, "For example, if Elias Wanatee knew what happened to the knife, where we could find that, and we could actually go out and find the knife, that's valuable."

*Id.* at 28, ll. 10–12. However, nothing in the record suggests that Wanatee could have provided such information.

of the plea offer to be, he testified, "I understood that it would require truthful testimony from Mr. Wanatee and testimony that would *at least help to gain a conviction on other persons who were involved,* particularly the person who did the stabbing." *Id.* at 54, ll. 10–16. This description of the plea agreement as requiring only information that would be "helpful" in convicting other persons, including the stabber, echoes the prosecutor's own comment that his office was interested in information that would "lead to" the conviction of the stabber. Testimony of Prosecutor, Second Habeas Hearing, at p. 28, ll. 7–10.

Similarly, trial counsel's earlier testimony, in the first *habeas* hearing in June of 1998, is more expansive concerning the kind of "cooperation" that was required by the plea agreement. In the first *habeas* hearing, trial counsel agreed that it was a "fair statement" that the prosecutor would be willing to offer Wanatee a second-degree murder charge "in exchange for his truthful cooperation in the continuing investigation into [DeCora's] homicide." *See* Testimony of Trial Counsel, First Habeas Hearing, p. 9, l. 3–8. In his own words, in 1998, trial counsel described the offer as including "that Mr. Wanatee would have to name other persons who were involved because at that point the police suspected there were other people involved in the death, but they didn't have any concrete leads on November 5 [1990]. So that was an integral part of the offer, to name the other persons involved." *Id.* at p. 9, l. 23 to p. 10, l. 4. Unlike his testimony in the 1999 hearing, in the 1998 hearing, trial counsel stated, "I can't say right now," in response to a direct question about whether Wanatee could have satisfied the plea agreement by testifying that he beat De-Cora, but he was too drunk to remember anybody else who was involved, adding that counsel's own "memory of it is that the prosecution felt other people were involved and they would want to have information tying those other people in for [sic] Mr. Wanatee." *See id.* at p. 32, ll. 13–24. *But see id.* at p. 33, l. 24 to p. 34, l. 4 ("And

I think specifically if the agreement was that Mr. Wanatee would name the codefendants and then testify against them and if he were to say, I can't, I was too drunk, that the county attorney's office would have found that that was noncompliance with the plea offer and would then have rejected any attempt for us to plead."). Additionally, trial counsel testified in 1998 that certain suspects had been identified at the time the trial information was filed against Wanatee, but that "[p]olice were still looking at the time the trial information was filed for at least one more person, and they thought perhaps another person was also involved, so they still had an ongoing investigation on the 14th [of November, 1990]," *see id.* at p. 11, ll. 8–14; that "[i]t was clear to me that there still were a lot of unanswered questions in their investigation and they weren't revealing everything to me for fear that I might somehow ruin the investigation," *see id.* at 12, ll. 10–14; and that, during the period the plea offer was open, the police reports identified "seven or eight different names in addition to Mr. Wanatee's name that we heard could have some involvement," *see id.* at p. 27, ll. 10–19. Thus, this testimony reflects a wider range of information than simply identification of "the stabber" that would have been helpful to the prosecution at the time the plea offer was made and expired.

Still more expansive is trial counsel's 1995 testimony in the state PCR proceedings, testimony that is nearest in time to the actual negotiation of the plea agreement of any testimony in the record of any of the participants in the negotiations. At that time, counsel testified that the prosecutor negotiating the agreement "did say that if [Wanatee] was willing to testify against codefendant or codefendants that we could have a plea offer made that would allow Mr. Wanatee to plead to second-degree murder." Trial Counsel's PCR Deposition, p. 4, ll. 8–11. Similarly, he testified, "The offer [the prosecutor] made was 'Let him roll over against the persons who were with him, or did this

with him, or however he put it, which I guess I took to mean that Mr. Wanatee would have to name the names of each person involved and testify against them.'" *Id.* at p. 56, ll. 8–14. Trial counsel also acknowledged in that testimony that, at the time that Wanatee was charged, there were still significant attempts being made to identify and apprehend other responsible parties. *Id.* at p. 46, ll. 11–15. Again, this evidence demonstrates that the prosecution's requirement of information identifying "the stabber" is a latter-day impression not borne out by more contemporaneous recollections.

Furthermore, in addition to the evidence above recounting the difficulties of investigators and the prosecutor's office in identifying all of the participants in the attack on DeCora and their roles in that attack, one of the difficulties the prosecution encountered in prosecuting Wanatee's co-defendants was that a witness, Mark Blackhawk, who could purportedly identify one of the co-defendants as the person who chased him with a knife during the attack on DeCora, had disappeared at the time of trial. *See* Testimony of Trial Counsel, Second Habeas Hearing, at p. 60, l. 7 to p. 61 l. 4; Trial Counsel's PCR Deposition at p. 25, l. 20 to p. 26, l. 6. Thus, during the course of trial, Wanatee's evidence that the co-defendants were involved in the planning and execution of the attack on DeCora would reasonably have become more, not less, important to the prosecution, despite the trial prosecutor's belief, as stated by trial counsel, that Wanatee's evidence would not overcome the deficiencies in the case against the co-defendants, Trial Counsel's PCR Deposition at p. 25, ll. 12–19 & p. 26, ll. 1–4, and despite the fact that the trial prosecutor showed no interest in enhancing his deteriorating case against the co-defendants by offering Wanatee a plea agreement in return for testimony against them. *Id.* at p. 26, ll. 15–25.

The inescapable conclusion, in the circumstances, is that the prosecutor wanted to identify "the stabber"; however, that does not translate into an inescapable conclusion that the prosecutor—or the terms of the plea agreement—would have required Wanatee to identify "the stabber." Rather, the prosecutor was seeking information that would help to identify all of the participants in the assault, because such identifications would likely have led—or could reasonably be hoped to lead—to identification of "the stabber." Thus, taking the evidence as a whole, the court concludes that there is a "reasonable probability" that evidence that "would lead to the stabb[er]"—as opposed to a specific identification of "the stabber"—including evidence of who the other participants in the assault were, or evidence that would lead to the conviction of other participants in the assault, was all that was required by, and would have satisfied the terms of, the plea agreement. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (the question on the "prejudice" prong is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Therefore, the court overrules the respondent's objection to the magistrate judge's determination of the terms of the plea agreement and what was required to satisfy it, and concludes that the plea agreement required evidence that "would lead to the stabb[er]"—as opposed to a specific identification of "the stabber"—including evidence of who the other participants in the assault were, or evidence that would lead to the conviction of other participants in the assault.

### b. The information Wanatee could have provided

Thus, whether Wanatee can show the necessary "prejudice" in this case turns on the adequacy of the information he could have provided to satisfy the plea agreement. *See Ayd,* 25 F.3d at 626–27 (considering what information the defendant knew or could have supplied). In 1995, Wanatee's trial counsel expressed his confidence that he could have convinced Wanatee to provide the necessary evidence, if a plea offer had been renewed after the trial information was filed and

after Wanatee was properly advised of the law applicable to the charges against him. *See* Trial Counsel's PCR Deposition at p. 54, ll. 13–18 & .p. 57, ll. 9–18. However, the court concludes that, as with the "would have accepted" prong of the analysis, some additional, non-conclusory evidence that Wanatee could have provided the necessary information is required. *Cf. Engelen,* 68 F.3d at 241 (to satisfy the "would have accepted" requirement, the claimant must show with something more than "non-conclusory evidence" that he would have agreed to the plea bargain, "if properly advised").

The respondent contends that Wanatee could not have satisfied the terms of the plea agreement, even as construed by the magistrate judge and the undersigned, because Wanatee told his counsel that one named suspect was not involved, that Wanatee did not know two other persons the police had named as suspects, and that his admissions about the conduct of others, when made, indicated that those suspects only threw "a punch or two" at DeCora. Thus, the respondent contends that Wanatee could not even provide evidence likely to identify others involved in the assault or likely to lead to the identity of "the stabber." The respondent also contends that Wanatee was too intoxicated to provide sufficiently useful information.

The respondent's argument based on Wanatee's comments about what persons he did or did not know, and what certain persons did or did not do, largely fails upon examination of the circumstances in which Wanatee purportedly made the statements upon which the respondent relies. Trial counsel testified in 1998 that, while the plea offer was pending, Wanatee told him "Phil Creek wasn't involved." Testimony of Trial Counsel, First Habeas Hearing, p. 15, ll. 14–17. Trial counsel also testified "that there's a Black Hawk and a Denney [sic] that the police had mentioned and [Wanatee] didn't know— and Elias said he did not know either one of those two people." *Id.* at p. 15, ll. 17–20. However, contrary to the respondent's contentions, these statements do not dem-

onstrate that Wanatee *could not* have performed the plea agreement; rather, they once again show only that Wanatee was *unwilling,* in the absence of proper legal advice, to cooperate or be a "snitch." The record demonstrates beyond cavil that Wanatee had a long association with both Creek and Denny and that both had been with Wanatee on the night of the attack on DeCora. Thus, Wanatee assuredly did know these two people and did know of their involvement, even if he did not know their precise actions during the assault. The other person Wanatee said he did not know was "a Black Hawk" who had been mentioned by police, *see id.,* but "Black Hawk" was identified as a victim or bystander, who claimed to have been chased by a person with a knife during the assault, not a suspect. *See* Testimony of Trial Counsel, Second Habeas Hearing, at p. 60, l. 7 to p. 61 l. 4; Trial Counsel's PCR Deposition at p. 25, l. 20 to p. 26, l. 6. Thus, Wanatee's purported lack of knowledge of the identity of this person would not have prevented Wanatee from providing information about others involved in the attack on DeCora or information that would likely lead to DeCora's "stabber." Furthermore, the record also suggests that Wanatee *did* in fact know "a Black Hawk," because Wanatee has since identified Mark Blackhawk as one of the people Wanatee believed helped DeCora beat up Wanatee and his uncle, prompting the retaliatory attack in which DeCora died. *See* Testimony of Petitioner, Second Habeas Hearing, p. 36, l. 7 to p. 37, l. 2. Thus, Wanatee's denial of knowledge of "a Black Hawk" again suggests an *unwillingness* to cooperate, rather than an *inability* to do so.

The real question is whether the information Wanatee would have been *able* to provide was sufficiently useful to satisfy the requirements of the plea offer. The court agrees that Wanatee's information that Shawn Denny and Joey Saul each "threw a punch or two" during the assault on DeCora, ·*see* Testimony of Petitioner, Second Habeas Hearing, at p. 45, ll. 14–17

& p. 56, ll. 19–24, is not testimony that identifies either one of these persons, or anyone else, as "the stabber," but this court has concluded that identifying "the stabber" was not a requirement of the plea agreement. It is, however, evidence that likely "would lead to the stabber," because it is evidence of who the other participants in the assault were. This information, for example, might have led to further evidence that what Wanatee perceived as a "punch" by one of these persons was in fact the infliction of the single, fatal stab wound. It is also information that reasonably might have led to the conviction of one or both of these two persons for their involvement in the assault on DeCora, *see, e.g.,* Testimony of Duane Hoffmeyer, Counsel for Co–Defendant, Second Habeas Hearing, p. 8, l. 5 to p. 10, l. 3, and this court also concludes that there is a reasonable probability that such evidence would also have been sufficient to satisfy the terms of the plea agreement.

Moreover, the conduct of these two persons in the actual assault on DeCora is not the totality of the pertinent evidence that Wanatee could have provided. As mentioned above, in reference to the requirements of the plea agreement, the record demonstrates that Wanatee could also have provided the following "useful" information: information regarding the prior beating of Wanatee and his uncle, as a motive for the attack on DeCora, and who else knew about that beating; information that certain persons were aware of Wanatee's animus toward DeCora; information about persons with whom Wanatee discussed a "payback" for his prior beating; and information about persons with whom Wanatee discussed a plan for attacking DeCora on the night DeCora was attacked and killed. The value of this evidence must be evaluated not just in terms of its usefulness as trial testimony against certain persons, but as evidence helpful in an investigation that was still underway while the plea offer was open.

The respondent also objects to any conclusion that Wanatee could have performed the plea agreement by providing the required information on the ground that Wanatee was too intoxicated to provide useful information. This objection is also more to the point, because it does go to Wanatee's *ability*, rather than his *willingness*, to provide sufficiently useful information. Certainly, there is objective evidence in the record that, on the night of the attack, Wanatee had been to several bars and had been drinking. However, the record does not demonstrate with certainty that Wanatee's ability to provide information about the assault on DeCora was so impaired that there is no reasonable probability that he could have provided sufficiently useful information. Indeed, it is patently inconsistent for the respondent to argue that Wanatee must have known "the stabber," but was nevertheless too intoxicated to provide useful information about persons involved in the attack on DeCora. Also, after hearing all of the evidence, a jury was not persuaded by Wanatee's argument that he was too drunk to form the requisite criminal intent for the crimes charged against him. Thus, while admittedly indicating limitations on Wanatee's ability to provide useful information, the evidence of Wanatee's intoxication is sufficiently equivocal that it does not necessarily require a different outcome on the "could have performed" prong of the "prejudice" analysis.

 The court therefore concludes that, based on the information Wanatee could have provided during the course of an on-going investigation of the assault on DeCora and the trial of persons accused of his assault and murder, there is a "reasonable probability" that Wanatee could have satisfied the terms of the plea agreement. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (the question on the "prejudice" prong is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *see also Ayd,* 25 F.3d at 626–27 (considering what information the defendant knew or could have supplied to determine whether it

would have satisfied the requirements of the plea agreement). Thus, Wanatee has shown the requisite "prejudice" to sustain his "ineffective assistance of counsel" claim, thereby clearing the last hurdle in the proof of his "ineffective assistance" claim.

### D. The Remedy

As a remedy on Wanatee's "ineffective assistance" claim, the magistrate judge recommended that the court enforce the plea agreement and allow Wanatee to plead guilty to second-degree murder. The respondent objects only to the availability of any remedy, on the ground that Wanatee should not prevail on this claim, not to the specific remedy recommended by the magistrate judge, if the court concludes that Wanatee has prevailed on his claim. Therefore, upon *de novo* review, having concluded that Wanatee does prevail on his "ineffective assistance" claim, the court will order that Wanatee's state conviction for first-degree murder be set aside, that Wanatee be allowed to plead guilty to second-degree murder in the death of Kelton DeCora, and that he be re-sentenced accordingly, or a writ of *habeas corpus* shall issue commanding Wanatee's release from custody on the ground that his continued custody is in violation of the Constitution and laws of the United States. See, e.g., *Frazier v. Roberts*, 441 F.2d 1224, 1229 (8th Cir.1971) (upon a finding that a *habeas* petitioner was entitled to relief on a claim of a constitutionally inadequate warrant, the court ordered that the trial court re-try the defendant within thirty days, and failing such timely re-trial, a writ of *habeas corpus* would issue commanding the petitioner's release); *Coss v. Lackawanna County Dist. Attorney*, 204 F.3d 453, 464 (3d Cir.2000) ("The normal relief that we grant in habeas corpus is to order that the habeas petitioner be freed, subject to the right of society to correct in a timely manner the constitutional error through a new state proceeding.").

### III. CONCLUSION

The court **overrules** the respondent's objections and **accepts** the magistrate judge's April 21, 2000, Supplemental Report and Recommendation. More specifically, the court concludes that 28 U.S.C. § 2254(d)(1), as recently interpreted by the United States Supreme Court in *Williams v. Taylor*, —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), does not bar Wanatee's "ineffective assistance" claim, because the state court decision denying Wanatee's claim of ineffective assistance of counsel in the course of plea negotiations is both "contrary to" and involves an "unreasonable application of" United States Supreme Court precedent regarding the "prejudice" standard on such a claim.

Furthermore, the court concludes that Wanatee has established the necessary "prejudice" to sustain his "ineffective assistance" claim. Specifically, the court finds that the prosecution offered Wanatee a plea agreement under which he would be allowed to plead guilty to second-degree murder in return for adequate "cooperation." The court also finds that there is a "reasonable probability" that Wanatee "would have accepted" such an offer, had he been properly advised by trial counsel, and that he "could have performed" the terms of the plea agreement offered, as those terms have been interpreted by the court.

THEREFORE,

1. **Judgment shall enter in favor of the petitioner** in these proceedings pursuant to 28 U.S.C. § 2254 on petitioner's claim of ineffective assistance of counsel in the course of plea negotiations. Judgment shall enter in favor of the respondent on all other claims.

2. **Within sixty (60) days of the date of this order,** or within such additional time as this or a reviewing court may subsequently grant, upon a showing of good cause, the petitioner's previous conviction for first-degree murder **shall be**

set aside, **the petitioner shall be allowed to plead guilty to second-degree murder** in the death of Kelton Decora, and he shall be **re-sentenced accordingly, or a writ of** *habeas corpus* **shall issue** requiring the release of petitioner Elias Wanatee from the custody of the respondent on the ground that such continued custody is in violation of the Constitution and laws of the United States.

**IT IS SO ORDERED.**